8

HAGOP T. BEDOYAN, CSB NO. 131285
JACOB L. EATON, CSB NO. 244834
LISA A. HOLDER, CSB NO. 217752
KLEIN, DENATALE, GOLDNER,
  COOPER, ROSENLIEB & KIMBALL, LLP
5260 N. Palm Avenue, Suite 201
Fresno, California 93704
Telephone: (559) 438-4374
Facsimile: (559) 432-1847
Email: hbedoyan@kleinlaw.com;
      jeaton@kleinlaw.com; lholder@kleinlaw.com

Proposed Attorneys for Debtor-in-Possession

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re:<br><br>CLUB ONE CASINO, INC.,<br><br>       Debtor-in-Possession. | Case No. 15-14017-B-11<br><br>Chapter 11<br><br>DC No. KDG-1<br><br>Emergency Hearing Date: October 16, 2015<br>Emergency Hearing Time: 9:30 a.m.<br>Place:  United States Bankruptcy Court<br>         2500 Tulare Street, Fifth Floor<br>         Department B, Courtroom 12<br>         Fresno, California<br>Judge: Honorable Rene Lastreto II |

**DECLARATION OF KYLE R. KIRKLAND IN SUPPORT OF MOTION TO USE CASH COLLATERAL AND GRANT ADEQUATE PROTECTION**

     I, Kyle R. Kirkland, declare as follows:

     1.     I am the president, director and 40% shareholder of CLUB ONE ACQUISITION CORP. ("COAC"). CLUB ONE CASINO, INC. ("COCI" or "Debtor") is the wholly-owned subsidiary of COAC and files consolidated tax returns with COAC. COAC filed a Chapter 11 case on October 14, 2015, Case No. 15-14021-B-11  COCI commenced the herein Chapter 11 case on October 14, 2015.

     2.     I submit this declaration (the "Declaration") in support of COCI's *Motion to Use Cash Collateral and Grant Adequate Protection* ("Motion"). Except as otherwise indicated,

all statements in this Declaration are based upon my personal knowledge; my review of the COCI and COAC's books and records, relevant documents and other information prepared or collected by Debtor's employees; or my opinion based on my experience with Debtor's operations and financial condition. In making my statements based on my review of Debtor's books and records, relevant documents and other information prepared or collected by the Debtor's employees, I have relied upon these employees recording, preparing or collecting any such documentation and other information. If I were called to testify as a witness in this matter, I could and would competently testify to each of the facts set forth herein based upon my personal knowledge, review of documents, or opinion. I am authorized to submit this Declaration on behalf of Debtor.

3. I have been the president and director of Debtor since February of 2008, and General Manager of COCI since June of 2009. I have over 20 years of experience in the California gaming industry. I am also the former chairman and director of Steinway Musical Instruments, Inc. Prior to my role at Steinway Musical Instruments, Inc., I was employed in the finance industry. I received an M.B.A. from Stanford University in 1988 and graduated from Harvard College in 1984, magna cum laude in economics.

4. Debtor was incorporated on March 28, 1994, for the purpose of operating an entertainment complex located in downtown Fresno called Club One Casino. Club One Casino began operation in November 1995 and includes a gaming facility, bar, restaurant and banquet facilities, administration, satellite wagering, and security offices. The gaming facility includes 51 card-tables contained in designated settings that allow patrons to engage in various table games as allowed under state law. Over its two decades in business, the Debtor has grown to become a significant community presence, a substantial taxpayer and a major employer in the Fresno area: it currently has about 280 active employees with a semi-monthly gross payroll of approximately $265,000.00.

5. COCI, a California S corporation, was founded by Sarantos and Charles "Bud" Long in 1994. In 2002, Long transferred his 50% interest in COCI to his wife, Elaine. In July of 2006, Sarantos, Elaine, and I, as principal for Kirkland Messina, Inc., signed a Letter of

Intent ("LOI") providing that a newly formed company would purchase COCI from Sarantos and Elaine for $27,000,000. The sale was concluded in 2008 under the terms of a certain Acquisition Agreement described below.

6. COCI is a wholly owned subsidiary of COAC". COAC was created for the sole purpose of holding the shares of COCI, which allowed the Senior Lender to hold a security interest in COAC's shares of COCI. The shares of COAC are owned by individuals licensed by the State of California and the City of Fresno to engage in gaming activities. COAC, like COCI, is an "S" corporation and both use an accrual basis of accounting.

7. COCI derives the majority of its annual income from its gaming operations. COCI's gross receipts for 2013 and 2014 were $12,990,230 and $14,492,845, respectively. COCI and COAC generated EBITDA of $274,605 and $460,058 during these same years, respectively.

8. In addition to me, William "Bill" Zender of Bill Zender & Associates, LLC, a noted gaming and regulatory consultant, is Debtor's only other director. Mr. Zender became an independent director of COCI pursuant to the terms of a Casino Management Services Agreement Dated October 1, 2015, between Debtor and COAC and Bill Zender and Associates LLC ("Zender Agreement"). COCI will seek approval of the Court for Zender to continue as the director of COCI throughout this case under the terms of the Zender Agreement.

9. Bill Hughes of GlassRatner Advisory & Capital Group, LLC,. is Debtor's Chief Restructuring Officer. Hughes is an officer of Debtor but not a director. Until very recently, Dana Messina ("Messina") was also a director and officer of the COCI, but he resigned on August 10, 2015.

10. I serve as the day to day general manager of COCI pursuant to a management agreement, but have never received a salary or management fee, despite the fact that I spend in excess of 70 hours per week managing the day to day operations of COCI's casino and attending to operational and industry issues. COCI accrues management fees for my services in its books, but it has never been paid to me nor my predecessor, Kirkland Messina, Inc. However, my monthly out of pocket expenses are reimbursed by COCI. I am also the President

of the California Gaming Association, a statewide trade association that represents California card rooms.

11.  COCI's primary assets are its gaming licenses, cash on hand, bank deposits, accounts receivable, kitchen, surveillance and gaming equipment, furnishings, and food and beverage inventory.

12.  COCI's largest senior and secured creditor is KMGI, Inc., which is currently owed approximately $24,290,150.00 (the "Senior Loan"). The Senior Lender is a special purpose company which, on April 11, 2012, after receiving approval from the California Gambling Control Commission, purchased the Senior Loan previously held by D.B. Zwirn Special Opportunities Fund, L.P. ("Zwirn") and later Fortress Value Recovery Fund I LLC. ("Fortress"). The Senior Lender purchased the Senior Loan – which had already matured and been declared in default – in order to satisfy guarantees in favor of Fortress and because it believed it could be more flexible with Sarantos and Elaine in restructuring the debts of the business. Efforts to refinance with third parties or to extend with Fortress the Senior Loan were unsuccessful. The Senior Lender is an entity jointly held by Messina and me. Messina has sole voting authority for the Senior Lender.

13.  In connection with the sale, Sarantos and Elaine *each* received approximately $10,700,000 in cash and a seller note for $2,500,000 due February 22, 2015. Elaine also received several million dollars of additional cash that had been paid into an escrow account when her husband, Long, was unable to receive payments from COCI after being convicted of a tax-related felony. In total, over $22,000,000 in cash was distributed to Sarantos and Elaine at the close of escrow. An additional $1,600,000.00 in interest on the seller notes was paid to Sarantos and Elaine after the close of escrow.

14.  In connection with the Acquisition Agreement, COAC, Sarantos, Elaine and the Senior Lender entered into a Seller Subordination Agreement dated February 22, 2008 (the "Subordination Agreement"). Sarantos and Elaine are subordinated creditors under the Subordination Agreement. The scope of the Subordination Agreement was the subject of litigation in New York where it was determined by final, non-appealable order that the Seller

Notes owned by Sarantos and Elaine are subordinated to the Senior Loan and such Seller Notes shall not receive payment until the Senior Loan is repaid in full.

15. Subsequent to the close of sale, there was a dispute between COAC and the sellers, Sarantos and Elaine, regarding an additional $1,000,513 (less than 4% of the purchase price). COAC, Sarantos and Elaine arbitrated the dispute pursuant to the arbitration provisions of the Acquisition Agreement. On July 8, 2011, the arbitrator awarded $1,000,513 to Sarantos and Elaine as well as attorneys' fees, costs and expenses (the "Arbitration Award"). The Arbitration Award was confirmed by the Fresno County Superior Court and reduced to a Judgment on September 26, 2011, with an amended Judgment correcting certain typographical errors being entered on November 8, 2011 (Case No. 11 CE CG 02432). With the accrual of interest and costs, the Arbitration Award against COAC has grown to approximately $1,379,929 as to Elaine and another $1,378,938 as to Sarantos. However, the Arbitration Award is _not_ a claim against the Debtor's estate. Only COAC is liable for the Arbitration Award.

16. After confirmation of the Arbitration Award by the Fresno County Superior Court, in January 2012, COAC and its lender sought declaratory and injunctive relief to (a) declare the Arbitration Award as to COAC to be governed by the Subordination Agreement; (b) block payment of the Arbitration Award as required under the Subordination Agreement; and (c) to obtain a declaration that the Subordination Agreement prohibits the demand for, or payment of, both the Arbitration Award and the Seller Notes until the Senior Loan is paid in full. After a bench trial on March 24-26, 2014, the New York trial court (Index No. 650049/2012), in its Post-Trial Decision and Order dated October 21, 2014, (a) dismissed COAC's complaint; (b) declared that no payment of interest or other payments of the subordinated notes to Sarantos and Elaine may be paid prior to payment in full of the Senior Loan; (c) declared that the Subordination Agreement does not bar payment by COAC of either the Arbitration Award or the California judgments confirming the Arbitration Award; and (d) held that Sarantos and Elaine were the prevailing parties, but the matter of attorney's fees recoverable from COAC would be referred to a Special Referee (the "New York Judgment").

The Special Referee would decide if any payments were appropriate, and if so, in what amount. As of this date, the Special Referee has not made a ruling regarding legal fees. On August 19, 2015, a portion of the New York Judgment relating to the impact of the Subordination Agreement on COAC's ability to satisfy the Arbitration Award or related judgments was appealed by COAC and KMGI to the Appellate Division of the New York Supreme Court. That appeal is pending. Neither Sarantos nor Elaine appealed the New York Judgment. Thus, the New York Court's findings that the Seller Notes are subordinated to the Senior Loan are final and non-appealable.

17. In May of 2015, Sarantos and Elaine sought to amend their existing complaint against COAC, in Case No. 11 CE CG 02432, to add COCI as the alter-ego of COAC, and for other relief including a TRO, a preliminary injunction and the appointment of a receiver. Hearings in the matter were continued twice to October 15, 2015, and October 22, 2015 (Receivership Motion).

18. In a separate lawsuit initiated by Sarantos against Messina, KMGI and me (Case No. 13CE CG 02124 MWS), Sarantos sought and obtained a TRO against COAC, KMGI and their agents. (KMGI has since been dismissed from the lawsuit). The hearing to have a Preliminary Injunction issued in this separate proceeding was also continued twice and is now scheduled for November 6, 2015.

19. On August 12, 2015 the Attorney General of the State of California filed an Accusation against the Clovis 500 Club. The Attorney General accused the Louis Sarantos, Jr. dba the Clovis 500 Club of engaging in an undisclosed, unapproved financing scheme to expand its business in violation of state gaming regulations. The Attorney General is seeking to have Louis Sarantos' license revoked and the gaming license of the Clovis 500 Club cancelled. The owners and financial stakeholders of the Clovis 500 Club include George Sarantos, his brother Louis and several former employees of COCI who were long time associates of Sarantos.

20. A precipitating factor in the filing of COCI's and COAC's' Chapter 11 cases has been the expansion of the Clovis 500 Club which was completed using a clandestine financing

scheme alleged to be unlawful. The expansion of this facility caused a substantial drop in revenue and operating income of COCI. On August 26, 2015, COCI and COAC filed a complaint in the Fresno County Superior Court (Case No. 15 CECG 02704) for damages against Louis Sarantos, an individual and doing business as the Clovis 500 Club and 500 Club Casino, and Sarantos for unfair competition and several other theories, including breaches of fiduciary duty and a non-competition agreement by Sarantos. The relocation and expansion of the Clovis 500 Club using unlawful financing by Sarantos and Sarantos' brother, Louis, has had a major negative impact on the revenues of COCI.

21. COCI and COAC were forced to seek relief under Chapter 11 in order to avoid the potential appointment of an unlicensed receiver to reorganize its business and perhaps end the years of unproductive litigation.

22. **Emergency Use**. To avoid immediate and irreparable harm to the Debtor and its estate pending a final hearing, Debtor requests interim authorization to use $1,59,165.00 from October 15 through November 15 (with a 10% variance) or through a final hearing on the Motion as described in the Budget. Debtor also requests authorization to use the cumulative amounts provided in each category of the Budget through March 31, 2016.

23. In the event the Court does not approve cash collateral use through March 31, 2016, Debtor reserves the right to submit amended budgets and will request periodic continuances of the interim cash collateral hearing and ongoing cash collateral use until such time as the Court approves final cash collateral use through March 31, 2016.

24. **Urgent need for cash collateral**. As stated above, Debtor owns and operates a 51 table license gaming operation in Downtown Fresno that is open 24 hours/day that relies exclusively on the availability of cash to operate. The immediate and irreparable harm that will befall Debtor if it does not obtain the use of Cash Collateral is (a) Debtor will be unable to honor its obligations to its gaming customers thereby violating California gaming laws, (b) Debtor will be unable to purchase food, alcohol, and other inventory good required in order to operate, (c) Debtor will be unable to pay its employees, and (d) Debtor will be unable to pay its utility bills, royalty fees and insurance premiums all of which would cause immediate crises to

1 | Debtor's ability to maintain its business, and effectively shut Debtor down. Each item on the
2 | Budget was carefully considered and deemed by Debtor's principals to be necessary to
3 | Debtor's continued operation.

4 |   25. Debtor and I are aware of no other creditor asserting an interest in "cash
5 | collateral" other than KMGI. Debtor will provide KMGI with adequate protection by
6 | continuing to operate its business, generating income, giving a replacement lien on post-
7 | petition assets of like kind and to the same extent as existed prior to the commencement of
8 | Debtor's case, and monthly adequate protection payments in the amount of $50,000.00.

9 |   26. I have reviewed the Interim Order attached to the Motion and agree to the terms
10 | contained in the Interim Order.

11 |   27. For all of the foregoing reasons, I respectfully request that the Court grant the
12 | relief requested in the Motion filed concurrently herewith.

13 |   I declare under penalty of perjury that the foregoing is true and correct to the best of my
14 | knowledge.

15 |   Executed this 15th day of October, 2015 in Fresno, California.

*[Signature]*
Kyle R. Kirkland

ORIGINAL