18

HAGOP T. BEDOYAN, CSB NO. 131285
JACOB L. EATON, CSB NO. 244834
LISA A. HOLDER, CSB NO. 217752
KLEIN, DENATALE, GOLDNER,
  COOPER, ROSENLIEB & KIMBALL, LLP
5260 N. Palm Avenue, Suite 201
Fresno, California 93704
Telephone: (559) 438-4374
Facsimile: (559) 432-1847
Email: hbedoyan@kleinlaw.com;
       jeaton@kleinlaw.com; lholder@kleinlaw.com

Proposed Attorneys for Debtor-in-Possession

# UNITED STATES BANKRUPTCY COURT

## EASTERN DISTRICT OF CALIFORNIA, FRESNO DIVISION

| | |
|---|---|
| In re:<br><br>CLUB ONE CASINO, INC.,<br><br>      Debtor-in-Possession. | Case No. 15-14017-B-11<br>Chapter 11<br>DC No. KDG-5<br><br>**DEBTOR'S MOTION PURSUANT TO SECTION 363 OF THE BANKRUPTCY CODE FOR ENTRY OF AN ORDER APPROVING THE ENGAGEMENT CONTRACT OF (I) MR. BILL HUGHES AS CHIEF RESTRUCTURING OFFICER OF THE DEBTOR AND (II) GLASSRATNER ADVISORY & CAPITAL GROUP, LLC TO ASSIST THE CRO AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION**<br><br>Date: November 10, 2015<br>Time: 2:30 p.m.<br>Place: United States Bankruptcy Court<br>      2500 Tulare Street, Fifth Floor<br>      Department B, Courtroom 13<br>      Fresno, California<br>Judge: Honorable René Lastreto II |

3HD232102

1

# CONTENTS

I. JURISDICTION ...................................................................................................... 4
II. BACKGROUND ..................................................................................................... 4
III. RELIEF REQUESTED ........................................................................................... 5
IV. QUALIFICATIONS ................................................................................................ 6
   A. Qualifications of Bill Hughes ............................................................................ 6
   B. Qualifications of GlassRatner ........................................................................... 7
V. SERVICES TO BE PROVIDED ............................................................................ 9
VI. PROFESSIONAL COMPENSATION ................................................................. 11
VII. GENERAL DISINTERESTEDNESS OF GLASSRATNER ............................... 12
VIII. INDEMNIFICATION AND LIABILITY LIMITATION PROVISIONS ........... 14
IX. BASIS FOR RELIEF ............................................................................................ 15
   A. Retention of GlassRatner Is Critical to the Debtor's Success ......................... 17

1  **TABLE OF AUTHORITIES**

2  **CASES**

3  *Baron & Budd, P.C. v. Unsecured Asbestos Claimants Comm.*, 2005 WL 435207, *14 (D.N.J. Feb. 25, 2005) .................................................................................................. 17

4  *Comm. Of Equity Sec. Holders v. Lionel Corp. (In re Lionel)*, 722 F.2d 1063, 1070 (2d Cir. 1983) ........................................................................................................... 15

5  *Fulton State Bank v. Schipper (In re Schipper)*, 933 F.3d 513, 515 (7th Cir. 1991) .................... 15

*In re Adva-Lite, Inc.*, Case No. 07-10264 (KJC) (Bankr. D. Del. Mar. 16, 2007) ...................... 17

6  *In re Calpine Corp.*, Case No. 05-60200 (Bankr. S.D.N.Y. Jan 17, 2007) ................................ 16

*In re Continental Airlines*, 203 F.3d 203, 211 (3d Cir. 2000) .................................................. 17

7  *In re Delaware & Hudson R.R. Co.*, 124 B.R. 169, 176 (Bankr. D. Del. 1991) ....................... 16

*In re Fairfield Residential LLC*, Case No. 09-14378 (Bankr. D. Del Jan 13, 2010) ............ 16, 17

8  *In re Fatburger Restaurants of California, Inc., et al.*, Case No. 09-13965 (Bankr. C.D. Cal. Feb. 16, 2011) ................................................................................................... 16, 17

9  *In re Global Home Products, LLC*, Case No. 06-10340 (KG) (Bankr. D. Del. May 4, 2006) ... 17

*In re Hoop Holdings, LLC*, Case No. 08-10544 (BLS) (Bankr. D. Del Apr. 22, 2008) ............. 16

10  *In re Integrated Resources, Inc.*, 147 B.R. 650, 656 (Bankr. S.D.N.Y. 1992) ........................ 16

*In re Leiner Health Products, Inc.*, Case No. 08-10446 (KJC) (Bankr. D. Del. Apr. 8, 2008) .. 16

11  *In re Linens Holding Co.*, Case No. 08-10832 (CSS) (Bankr. D. Del May 28, 2008) ............ 16

*In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 153 (Bankr. D. Del. 1999) ................. 16

12  *In re Motor Coach Industries International, Inc.*, Case No. 08-12136 (Bankr. D. Del Oct. 15, 2008) ........................................................................................................... 16

13  *In re Pappas Telecasting, Inc.*, Case No. 08-10916 (Bankr. D. Del June 26, 2008) ............... 16

*In re Sea Containers Ltd.*, Case No. 06-11156 (KJC) (Bankr. D. Del. May 8, 2007) ............... 17

14  *In re The Holliston Mill, Inc.*, Case No. 07-10687 (MFW) (Bankr. D. Del. June 6, 2007) ...... 17

*In re Tokheim Corp.*, Case No. 02-13437 (RJN) (Bankr. D. Del. Feb. 25, 2003) ..................... 16

15  *In re TOUSA, Inc.*, Case No. 08-10928 (Bankr. S.D. Fla. Mar. 26, 2008); *In re American Home Mortgage Holdings, Inc.*, Case No. 07-11047 (Bankr. D. Del. Sept. 5, 2007) .................... 16

16  *In re Westcliff Medical Laboratories, Inc.*, Case No. 10-16743 (Bankr. C.D. Cal. June 25, 2010) ........................................................................................................... 16, 17

17  *In re World Health Alternatives, Inc.*, Case No. 06-10166 (PJW) (Bankr. D. Del. Mar. 15, 2006) ........................................................................................................... 17

18  *Myers v. Martin (In re Martin)*, 91 F.3d 389, 395 (3d Cir. 1996) ........................................... 15

*Smith v. Van Gorkom*, 488 A.2d 858, 872 (Del. 1985) ........................................................ 16

19  *Stephens Indus., Inc. v. McClung*, 789 F.2d 386, 390 (6th Cir. 1986) .................................. 15

*United States v. Energy Resources Co.*, 495 U.S.545, 549 (1990) ........................................ 17

20  **STATUTES**

21  11 U.S.C. § 105 ................................................................................................................ 17

11 U.S.C. § 1107 ................................................................................................................. 4

22  11 U.S.C. § 1108 ................................................................................................................ 4

11 U.S.C. § 363 ..................................................................................................... 15, 16, 17

23  28 U.S.C. § 1334 ................................................................................................................ 4

28 U.S.C. § 1408 ................................................................................................................ 4

24  28 U.S.C. § 1409 ................................................................................................................ 4

28 U.S.C. § 157 .................................................................................................................. 4

25

26

27

28

Club One Casino, Inc., the above-captioned debtor and debtor in possession (the "Debtor"), hereby files this motion (the "Motion") for entry of an order approving the letter agreement (the "Engagement Contract") dated October 9, 2015, by and between the Debtor and GlassRatner Advisory & Capital Group, LLC ("GlassRatner", or the "Firm"). Pursuant to the Engagement Contract, Bill Hughes ("Mr. Hughes") will serve as Chief Restructuring Officer ("CRO"). In addition, GlassRatner shall provide the services of other GlassRatner personnel at the direction of the CRO, but only with the consent of the Debtor. Such additional personnel will bill at their stated hourly rates (the "Additional Personnel"). In support of this Motion, the Debtor submits the Declaration of Hughes (the "Hughes Declaration"), and further respectfully represents as follows:

## I. JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A) and (M). Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409. These matters have been referred to the Court by United States District Court for the Eastern District of California according to General Orders 182 and 223. The statutory bases for the relief requested herein are sections 105 and 363 of title 11 of the United States Code (the "Bankruptcy Code") and Rules 9014, 6004 and 2002(a)(2) of the Federal Rules of Bankruptcy Procedure ("FRBP").

## II. BACKGROUND

On October 14, 2015 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). The Debtor continues to operate and manage its affairs as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee, examiner, or committee has been appointed in this chapter 11 case.

Debtor was incorporated on March 28, 1994, for the purpose of operating an entertainment complex located in central Fresno called Club One Casino. Club One Casino began operation in November 1995 and includes a gaming facility, bar, restaurant and banquet facilities, administration, satellite wagering, and security offices. The gaming facility includes

51 card-tables contained in designated settings that allow patrons to engage in various table games as allowed under state law. Over its two decades in business, the Debtor has grown to become a significant community presence, a substantial taxpayer and a major employer in the Fresno area: it currently has about 280 active employees with a semi-monthly gross payroll of approximately $265,000.00.

Since 2008, the Debtor has suffered from litigation generated by its former owners – George Sarantos ("Sarantos") and Elaine Long ("Elaine"). Sarantos and Elaine - who already have received over $22 million in cash, and subordinated unsecured notes with current balances totaling approximately $4,150,000.00 each, from their sale of the Club One Casino to the Debtor's current ownership - are seeking an additional $2.7 million. Despite the best efforts of the Debtor and its ownership to resolve disputes with Sarantos and Long on a consensual basis, the former owners continue to pursue aggressive collection efforts against Club One Casino. Sarantos, together with certain former employees of the Debtor and others, also engaged in activities to harm the Debtor by using unlawful financing to relocate and expand a competitor to Club One Casino, called the Clovis 500 Club.

The Debtor and its parent holding company were forced to commence their Chapter 11 cases in order to forestall Sarantos and Long's attempts to obtain the appointment of a receiver over Club One Casino, to preserve its on-going business operations and to address financial challenges to its business precipitated by unlawful competition from Clovis 500 Club by restructuring its debts through the reorganization process.

Additional factual background regarding the Debtor, including its current and historical business operations and the events precipitating its chapter 11 filing, is set forth in detail in the Declaration of Kyle R. Kirkland in Support of the Motion filed contemporaneously with this Motion and incorporated herein by reference.

### III. RELIEF REQUESTED

By this Motion, the Debtor requests the entry of an order, pursuant to sections 105 and 363 of the Bankruptcy Code, approving the Engagement Contract attached hereto as **Exhibit 1** to the Hughes Declaration. Pursuant to the Engagement Contract, Mr. Hughes will serve as

CRO and the Additional Personnel will perform other services required of GlassRatner under the Engagement Contract. In support of this Motion, the Debtor relies on the Hughes Declaration and the Kirkland Declaration.

The Debtor's relief requested herein is necessary to the successful administration of the Bankruptcy Case since some of the Debtor's principals are also principals of the Debtor's largest secured creditor, KMGI, Inc. ("KMGI") and the Debtor's parent, Club One Acquisition Corp. ("COAC"), which is also a debtor in a companion chapter 11 case pending before the Court (Case No. 15-14021-B-11). The Debtor requires the CRO and GlassRatner to immediately begin providing services of an experienced CRO to guide existing management through a restructuring of the Debtor's operations and a successful resolution of its chapter 11 case. Further, any delay of the CRO's and GlassRatner's services could cause irreparable harm to the Debtor's estate.

Mr. Hughes and GlassRatner will assist management in evaluating strategic alternatives, communicating with the Debtor's stakeholders, and providing business plan analysis for the purpose of, ultimately, assisting the in the preparation of a plan of reorganization and disclosure statement to maximize value for the estate. Without such services, it would be difficult, if not impossible, for the Debtor to gather and analyze the financial information necessary to its reorganization and the preparation of a disclosure statement that complies with the requirements of section 1125 of the Bankruptcy Code.

### IV. QUALIFICATIONS

**A.     Qualifications of Bill Hughes**

Mr. Hughes is a senior managing director at GlassRatner with nearly 20 years of experience in the formation and evaluation of strategic restructuring alternatives, the development of plans of reorganization and the disposition of assets. Mr. Hughes also has extensive experience in working on sales or other fundamental transactions in distressed situations or chapter 11 cases, including Section 363 asset sales. Mr. Hughes graduated from Arizona State University where he majored in Accounting and he is a licensed Certified Public Accountant in Arizona. Mr. Hughes is also Certified Insolvency and Restructuring Advisor and

received his credential as a Certified Fraud Examiner from the Association of Certified Fraud Examiners. In 2014, Mr. Hughes was appointed by Governor Jan Brewer to the Maricopa County Commission on Trial Court Appointments to investigate, interview and evaluate applicants for judgeships.

Mr. Hughes specializes in advising on bankruptcies, reorganizations and business restructurings and in providing expert witness testimony for issues including lost profit, fraud, cash collateral and valuation. The compensation arrangement reflected in the Engagement Contract is consistent with, and typical of, arrangements entered into by Mr. Hughes and other restructuring management consulting experts with respect to rendering similar services for clients such as the Debtor.

Mr. Hughes has served as a financial advisor in many bankruptcy-related matters. Some of the notable engagements in which he was involved include: The Majestic Star Casino, LLC; Herbst Gaming, Inc; Integrated Health Services, Inc.; Aladdin Gaming Holdings, LLC; and Resort at Summerlin, LP. Mr. Hughes also served as a financial advisor to the Official Committee of Non-Bondholder Unsecured Creditors in re: *Hollywood Casino Shreveport et al.* as well as serving as a financial advisor to the Official Committee of Unsecured Creditors in the chapter 11 matter of GB Holdings, Inc., the former owner and operator of the Sands Hotel and Casino in Atlantic City.. Mr. Hughes's further qualifications are detailed in the Hughes Declaration.

Prior to joining GlassRatner, Mr. Hughes held senior positions with XRoads Solutions Group, LLC; Mesirow Financial Consulting; and the Corporate Recovery practice of KPMG, LLP.

**B.    Qualifications of GlassRatner**

The Debtor believes that GlassRatner is well qualified to advise and assist the Debtor in connection with a successful restructuring that will maximize value for stakeholders. GlassRatner has significant and extensive experience providing similar financial advisory services, has an excellent reputation for providing such services throughout the United States and internationally, and has the resources necessary to provide these complex and highly

specialized services. GlassRatner was founded in 2001 and has eight offices in five states, including offices in Bakersfield, California. GlassRatner provides a broad range of corporate advisory services to its clients including, without limitation, services pertaining to: (i) general financial advice, (ii) mergers, acquisitions and divestitures, (iii) special committee assignments, (iv) capital raising and (v) corporate restructuring. GlassRatner and its senior professionals have extensive experience in providing financial advisory services to distressed companies and to creditors, equity holders, asset purchasers and other constituencies in reorganization proceedings and complex financial restructurings, both in- and out-of-court. Since 2002, GlassRatner has been involved in over 50 announced or completed restructurings representing in excess of $5 Billion of restructured liabilities. For instance, GlassRatner and its professionals are providing or have provided financial advisory, investment banking and other services in connection with the restructuring of: Crumbs Bake Shops, U.S. Coal, Sea Island Company and Southwest Recreational Industries. The Debtor has selected GlassRatner based on its experience and expertise in providing financial advisory services in Chapter 11 cases throughout the country.

　　　　The Debtor has determined that obtaining the services of a CRO and other personnel with casino turnaround and chapter 11 experience will enhance its ability to (a) operate and meet its administrative obligations in this Bankruptcy Case and (b) preserve and maximize the value of its assets pending any sale. As such, the Debtor has chosen to utilize GlassRatner personnel as appropriate and has appointed Mr. Hughes, of GlassRatner, to the position of CRO, subject to the Court granting this Motion.

　　　　GlassRatner and Mr. Hughes have significant knowledge of the casino industry and will be in a position to become familiar with the Debtor's financial affairs, debt structure, operations and related matters. GlassRatner has developed relevant experience regarding the casino industry that will assist it in providing effective and efficient services to the Debtor in this Bankruptcy Case.

　　　　As such, the Debtor believes that GlassRatner is well-qualified and able to advise it in a cost-effective, efficient and timely manner. The Debtor has been advised by GlassRatner that it

will endeavor to coordinate with the other professionals retained in this Bankruptcy Case to eliminate unnecessary duplication or overlap of work. Therefore, the Debtor submits that the retention and employment of GlassRatner is in the best interests of its estate, creditors and other stakeholders in this Bankruptcy Case.

## V. SERVICES TO BE PROVIDED

By this Motion, the Debtor seeks an order authorizing the employment of GlassRatner to provide CRO services as described in the Engagement Contract (the "Services").

The duties and powers of the CRO are enumerated in the Engagement Contract and are as follows:

1. The CRO shall be an officer of the Debtor and shall have the duties similar to that of a Chief Executive Officer including, but not limited to: (a) assisting in all aspects of the Debtor's business activities and operations, including budgeting, cash management and financial management; (b) negotiations regarding the relationship with the Debtor's lenders, and investors (c) negotiations with vendors, customers and other creditors (d) hiring and terminating of employees of the Debtor (see limitation in Par. 2), (e) review of daily operating activity, (f) evaluating liquidity options including restructuring, refinancing and reorganizing; (g) reviewing purchases and expenses and (h) acting as the Debtor's representative in court hearings as appropriate.

2. The CRO understands that the Debtor has engaged the law firm of Klein DeNatale Goldner as its counsel ("KDG"), and that the powers of the CRO do not include the power to terminate KDG or to terminate the shareholder employees. Only the Board can vote to terminate a shareholder employee or replace KDG.

3. The CRO shall assist the Debtor in pursuing a refinancing or restructuring of the obligations due the Debtor's secured lender which may include solicitation of multiple capital sources but shall only be involved in any refinancing efforts or negotiations to the extent requested by the Board of Directors.

4. The CRO shall assist the Debtor in evaluating and executing restructuring alternatives.

5. The CRO shall not have authority over (a) approving a sale of substantially all the assets of the Debtor; and, (b) causing the Debtor to commence a proceeding under Chapter 11 of the Bankruptcy Code or to take such other judicial action with respect to the Debtor. Again these activities would require Board approval and appropriate Board resolutions.

6. The CRO, who shall not be a director of the Board, shall report to the Board of the Debtor provided, however, that the CRO shall not require the consent or approval of the Board to take action (or elect not to take action) in such officer's capacity as CRO; provided further, however, the CRO shall routinely consult and provide the Board with the status of actions which have been initiated and/or actions which are being planned but not yet initiated.

Notwithstanding anything in the Engagement Contract to the contrary, the Debtor is permitted to indemnify those persons serving as corporate officers on the same terms as provided to the Debtor's other officers and directors under the corporate by-laws and applicable state law. There shall be no other indemnification of GlassRatner or its affiliates. Accordingly, as part of this Motion, the Debtor requests that the Court approve the indemnification provisions as set forth therein as modified by the above language.

Notwithstanding any provisions of the Engagement Contract to the contrary, consistent with the "Jay Alix Protocol" implemented by the Office of the United States Trustee, Mr. Hughes and GlassRatner agree that:

> **In the event the Debtor seeks to have any of the Additional Personnel assume executive officer positions other than Mr. Hughes, or to materially change the terms of the engagement by modifying the functions of the executive officer personnel, a motion to modify the employment as such will be filed.**
>
> **No principal, employee, or independent contractor of GLASSRATNER and its affiliates will serve as a director of the Debtor during the pendency of the Debtor's chapter 11 case.**
>
> **For a period of three (3) years after the conclusion of the engagement, neither GlassRatner nor any of its affiliates will make any investments in the Debtor.**

## VI. PROFESSIONAL COMPENSATION

The Debtor and GlassRatner have agreed to the proposed compensation and payment structure summarized below and set forth in detail in the Engagement contract (the "Fee Structure"):

(a) Hourly Fee: The Debtor has agreed to pay the CRO at the rate of $375.00 per hour subject to a monthly maximum on fees billed each month ("Monthly Cap") for the services of the CRO outlined in the Engagement Contract. The Monthly Cap for the first month of the engagement will be $25,000.00, and $15,000.00 per month thereafter. The Engagement Contract can be terminated by either party with 30 days written notice. Payment will be due following entry of an order approving the Services Agreement between the Debtor and GlassRatner and on the 1st of each month thereafter. It is contemplated that the CRO will average approximately fifteen (15) hours per week during the first month and ten (10) hours per week thereafter. Travel time shall be compensated at 25% of the stated hourly rate.

(b) Fees in Excess of Monthly Cap: Should GlassRatner or CRO incur fees during any specific month that exceed the Monthly Cap, ("Unbilled Fees"), such fees shall be treated as follows:

   i. 50% of the Unbilled Fees shall be carried over and billed in the month immediately following, and

   ii. 50% of the Unbilled Fees shall be permanently written off by GlassRatner.

(c) Standard Hourly Rate: At the present time, GlassRatner does not anticipate the need for Additional Personnel to assist the CRO. If Additional Personnel is required, GlassRatner will provide a supplemental declaration to this Motion.

(d) Cash on Account: The Debtor did not make any deposit or pay any retainer to GlassRatner before the commencement of the case.

In addition to the hourly rates set forth above, the Debtor shall reimburse both GlassRatner and the CRO respectively for all reasonable out-of-pocket expenses incurred in connection with this engagement such as travel, lodging, telephone and facsimile charges. Further, should GlassRatner provide litigation support consulting or forensic accounting, those services will be billed in addition to the CRO services.

GlassRatner shall file with the Court, with copies to the United States Trustee and all official committees, a monthly report of staffing on the engagement for the previous month.

1　Such report shall include the names and functions filled of the individuals assigned. All
2　staffing shall be subject to review by the Court in the event an objection is filed.

3　　　GlassRatner shall file with the Court (and serve copies on the United States Trustee and
4　any official committees appointed in this case contemporaneously with such filing) reports of
5　compensation earned and expenses incurred on at least a quarterly basis. Such reports shall
6　contain summary charts which describe services provided, identify the compensation earned by
7　each executive officer and staff employee provided, and itemize the expenses incurred. Time
8　records for all GlassRatner Additional Personnel other than the CRO shall (i) be appended to
9　the reports, (ii) contain detailed time entries describing the task(s) performed, and (iii) be
10　organized by project category. When GlassRatner personnel are providing services at an
11　hourly rate, such personnel shall record their time entries in increments of no greater than one-
12　tenth hour (.1). All compensation shall be subject to review by the Court in the event an
13　objection is filed. The first quarterly report will be submitted forty-five (45) days from the end
14　of the first calendar quarter after the Petition Date and will cover the period to and including
15　the last day of the first quarter after the Petition Date. This procedure will continue at three
16　month intervals thereafter. Because GlassRatner is not being employed as a professional under
17　section 327 of the Bankruptcy Code, it will not be submitting regular fee applications pursuant
18　to sections 330 and 331 of the Bankruptcy Code. GlassRatner will, however, submit certain
19　reports described above.

20　　　**VII.　GENERAL DISINTERESTEDNESS OF GLASSRATNER**

21　　　Although the Debtor does not propose to retain GlassRatner under section 327 of the
22　Bankruptcy Code, GlassRatner has nonetheless performed a computerized conflict check and,
23　to the best of its knowledge and except to the extent disclosed in the Hughes Declaration, does
24　not hold any interest adverse to the interests of the Debtor's estate. Furthermore, by the
25　Hughes Declaration, Mr. Hughes provides full and complete disclosure in order to demonstrate
26　that the Firm satisfies all requirements that would be imposed by the Bankruptcy Code and
27　Bankruptcy Rules for employment in this case.

28

GlassRatner has agreed not to share with any person or entity any compensation received by it in the Debtor's case, except as among the members, associates, and employees of GlassRatner. Neither GlassRatner, nor any of its principals, employees, agents or affiliates has any connection with the Debtor, its creditors, the United States Trustee or any other party with an actual or potential interest in the Bankruptcy Case or their respective attorneys or accountants, except as set forth in the Hughes Declaration.

From time to time, GlassRatner has provided services, and will continue to provide services, to certain creditors of the Debtor and various other parties adverse to the Debtor in matters unrelated to the Bankruptcy Case.

These unrelated matters involve attorneys, financial advisors, and creditors, some of whom may be claimants or parties with actual or potential interests in this case or may represent such parties.

GlassRatner personnel and their family members may have business associations with certain creditors of the Debtor unrelated to the Bankruptcy Case. Additionally, in the ordinary course of its business, GlassRatner may engage counsel or other professionals in unrelated matters who now represent, or who may in the future represent, creditors, or other interested parties in the Bankruptcy Case.

The Debtor maintains business relationships with numerous shareholders, lenders, creditors and other parties. GlassRatner may have advisory or other commercial or professional relationships with such entities or persons completely unrelated to the Debtor or its business affairs. No such relationships are in any way related to the Bankruptcy Case.

Because the Debtor is a large enterprise with numerous creditors and other relationships, GlassRatner is unable to state with certainty that every client relationship or other connection has been disclosed. In this regard, if GlassRatner discovers additional information that requires disclosure, GlassRatner will file a supplemental disclosure with the Court.

GlassRatner has not been retained to assist any entity or person other than the Debtor on matters relating to, or in connection with, the Bankruptcy Case. If this Court approves the proposed employment of GlassRatner by the Debtor, GlassRatner will not accept any

engagement or perform any services for any entity or person other than the Debtor in the Bankruptcy Case. GlassRatner will, however, continue to provide professional services to, and engage in commercial or professional relationships with, entities or persons that may be creditors of the Debtor or parties in interest in the Bankruptcy Case, provided, however, that such services do not relate to, or have any direct connection with, the Bankruptcy Case.

The Debtor does not owe GlassRatner any amount for services performed or expenses incurred prior to the Petition Date, and thus, GlassRatner is not a prepetition creditor of the Debtor.

Accordingly, the Debtor believes that GlassRatner is a "disinterested person" as defined in section 101(14) of the Bankruptcy Code.

**VIII. INDEMNIFICATION AND LIABILITY LIMITATION PROVISIONS**

The Engagement Contract contains standard indemnification and limitation of liability language with respect to GlassRatner's services. Notwithstanding any provisions of the Engagement Contract to the contrary, in accordance with the Protocol, GlassRatner has agreed otherwise, as set forth below.

With respect to Mr. Hughes in his capacity as CRO, the Debtor shall indemnify the CRO on the same terms as provided to the Debtor's directors under the Debtor's by-laws and applicable state law.

With respect to the Additional Personnel, the Debtor shall have no obligation to indemnify GlassRatner or to provide contribution or reimbursement to GlassRatner for any claim or expense that is either (a) judicially determined to have resulted primarily from the willful misconduct, gross negligence, bad faith or self-dealing of GlassRatner; or (b) settled prior to a judicial determination as to GlassRatner's willful misconduct, gross negligence, bad faith or self-dealing but determined by the Court, after notice and a hearing, to be a claim or expense for which GlassRatner should not receive indemnity, contribution or reimbursement under the terms of the Engagement Contract.

If GlassRatner believes that it is entitled to the payment of any amounts by the Debtor on account of the Debtor's indemnification with respect to the Additional Personnel, including

without limitation the advancement of defense costs, before the earlier of (a) the entry of an order confirming a chapter 11 plan in this Bankruptcy Case (that order having become a final order no longer subject to appeal) and (b) the entry of an order closing, dismissing or converting this chapter 11 case, GlassRatner must file an application to this Court seeking such payment, and the Debtor may not pay any such amounts to GlassRatner before the entry of an order by this Court approving the payment; provided, however, that the foregoing is intended only to specify the period of time during which the Court shall have jurisdiction over any request for indemnification by GlassRatner, and is not a provision limiting the duration of the Debtor's obligation to indemnify GlassRatner.

Finally, notwithstanding any provisions of the Engagement Contract to the contrary, GlassRatner has agreed not to raise or assert any defense based upon jurisdiction, venue, abstention or otherwise to the jurisdiction and venue of this Court to hear or determine any controversy or claims with respect to, in connection with, arising out of, or in any way related to GlassRatner's engagement in this Bankruptcy Case.

### IX. BASIS FOR RELIEF

Section 363 of the Bankruptcy Code provides, in relevant part, that a debtor in possession "after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b). Under applicable case law in this and other circuits, if a debtor's proposed use of its assets pursuant to section 363(b) of the Bankruptcy Code represents a reasonable business judgment on part of the debtor, such use should be approved. *See e.g.*, *Myers v. Martin (In re Martin)*, 91 F.3d 389, 395 (3d Cir. 1996) (citing *Fulton State Bank v. Schipper (In re Schipper)*, 933 F.3d 513, 515 (7th Cir. 1991)); *Stephens Indus., Inc. v. McClung*, 789 F.2d 386, 390 (6th Cir. 1986); *Comm. Of Equity Sec. Holders v. Lionel Corp. (In re Lionel)*, 722 F.2d 1063, 1070 (2d Cir. 1983); *In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 153 (Bankr. D. Del. 1999); *In re Delaware & Hudson R.R. Co.*, 124 B.R. 169, 176 (Bankr. D. Del. 1991) (courts have applied the "sound business purpose" test to evaluate motions brought pursuant to section 363(b)); *In re Integrated Resources, Inc.*, 147 B.R. 650, 656 (Bankr. S.D.N.Y. 1992) (quoting *Smith v. Van Gorkom*, 488

1    A.2d 858, 872 (Del. 1985)) ("[T]he business judgment rule is a 'presumption that in making a
2    business decision the directors of a corporation acted on an informed basis, in good faith and in
3    the honest belief that the actions were in the best interests of the company.'").

4         Bankruptcy courts have analyzed the propriety of a debtor's employment of corporate
5    restructuring officers, advisors and professionals under section 363 on numerous occasions and
6    have determined it is an appropriate exercise of the debtor's business judgment to employ a
7    restructuring professional in this manner. *See In re Westcliff Medical Laboratories, Inc.*, Case
8    No. 10-16743 (Bankr. C.D. Cal. June 25, 2010); *In re Fatburger Restaurants of California,*
9    *Inc., et al.*, Case No. 09-13965 (Bankr. C.D. Cal. Feb. 16, 2011); *In re Fairfield Residential*
10   *LLC*, Case No. 09-14378 (Bankr. D. Del Jan 13, 2010); *In re Motor Coach Industries*
11   *International, Inc.*, Case No. 08-12136 (Bankr. D. Del Oct. 15, 2008) (approving retention of
12   CRO and crisis managers); *In re Pappas Telecasting, Inc.*, Case No. 08-10916 (Bankr. D. Del
13   June 26, 2008); *In re Linens Holding Co.*, Case No. 08-10832 (CSS) (Bankr. D. Del May 28,
14   2008); *In re Hoop Holdings, LLC*, Case No. 08-10544 (BLS) (Bankr. D. Del Apr. 22, 2008); *In*
15   *re Leiner Health Products, Inc.*, Case No. 08-10446 (KJC) (Bankr. D. Del. Apr. 8, 2008); *In re*
16   *TOUSA, Inc.*, Case No. 08-10928 (Bankr. S.D. Fla. Mar. 26, 2008); *In re American Home*
17   *Mortgage Holdings, Inc.*, Case No. 07-11047 (Bankr. D. Del. Sept. 5, 2007); *In re Calpine*
18   *Corp.*, Case No. 05-60200 (Bankr. S.D.N.Y. Jan 17, 2007).

19         A debtor, pursuant to section 363(b), may employ one or more professionals to act as
20   their restructuring officers or managers or crisis officers or managers. *See In re Tokheim Corp.*,
21   Case No. 02-13437 (RJN) (Bankr. D. Del. Feb. 25, 2003). The retention of interim corporate
22   officers and other temporary employees is proper under section 363 of the Bankruptcy Code.
23   Numerous courts have authorized retention of officers utilizing this provision of the
24   Bankruptcy Code, including this Court. *See In re Westcliff Medical Laboratories, Inc.*, Case
25   No. 10-16743 (Bankr. C.D. Cal. June 25, 2010); *In re Fatburger Restaurants of California,*
26   *Inc., et al.*, Case No. 09-13965 (Bankr. C.D. Cal. Feb. 16, 2011); *In re Fairfield Residential*
27   *LLC*, Case No. 09-14378 (Bankr. D. Del Jan. 13, 2010); *In re The Holliston Mill, Inc.*, Case
28   No. 07-10687 (MFW) (Bankr. D. Del. June 6, 2007); *In re Sea Containers Ltd.*, Case No. 06-

1 | 11156 (KJC) (Bankr. D. Del. May 8, 2007); *In re Adva-Lite, Inc.*, Case No. 07-10264 (KJC)
2 | (Bankr. D. Del. Mar. 16, 2007); *In re Global Home Products, LLC*, Case No. 06-10340 (KG)
3 | (Bankr. D. Del. May 4, 2006); *In re World Health Alternatives, Inc.*, Case No. 06-10166 (PJW)
4 | (Bankr. D. Del. Mar. 15, 2006).

5 Additionally, the Court's general equitable powers codified in section 105(a) of the Bankruptcy Code provide ample authority for the relief requested herein. Section 105(a) of the Bankruptcy Code empowers the court to "issue any order, process, or judgment that is necessary to carry out the provisions of this title." "*See 11 U.S.C. § 105(a). See also United States v. Energy Resources Co.*, 495 U.S.545, 549 (1990); *In re Continental Airlines*, 203 F.3d 203, 211 (3d Cir. 2000) ("Section 105(a) of the Bankruptcy Code supplements courts' specifically enumerated bankruptcy powers by authorizing orders necessary or appropriate to carry out provisions of the Bankruptcy Code."); *Baron & Budd, P.C. v. Unsecured Asbestos Claimants Comm.*, 2005 WL 435207, *14 (D.N.J. Feb. 25, 2005) (reciting the power of the bankruptcy court to "… issue any order … that is necessary or appropriate to carry out the provisions of … [title 11]").

The terms and conditions of the Engagement Contract were negotiated by the Debtor and GlassRatner at arm's length and in good faith. The Debtor submits that the employment of GlassRatner is a sound exercise of its business judgment and satisfies section 363 of the Bankruptcy Code as GlassRatner's services are necessary and essential to the Debtor's restructuring efforts. Mr. Hughes has extensive experience providing management and financial services to distressed companies and those involved in the gaming industry.

A. **Retention of GlassRatner Is Critical to the Debtor's Success**

Denying the relief requested herein would deprive the Debtor of the assistance of a highly qualified CRO and disadvantage the Debtor and all parties in interest. Indeed, the Debtor would be forced to engage a new CRO who lacks a thorough understanding of the Debtor's business and restructuring initiatives – both already in progress and soon to be implemented. Further, hiring a new CRO would involve a learning curve, significant time and additional resources –which are in short supply given the brief timeframe within which the

Debtor seeks to emerge from this Bankruptcy Case. Accordingly, the Debtor respectfully submits that the services provided by GlassRatner are critical to the success of the Bankruptcy Case and requests that the Court approve the Engagement Contract in substantially the form attached to the Hughes Declaration as **Exhibit 1**.

The Debtor submits that the employment of GlassRatner and Mr. Hughes under the terms of the Engagement Contract would greatly benefit the Debtor's estate and creditors. The absence of executives capable of achieving a successful reorganization would hinder the Debtor's ability to reorganize in an efficient and effective manner.

Moreover, Mr. Hughes is qualified for the position for which he is being employed. The Debtor has determined that the terms of the Engagement Contract are within the range of those for senior executive officers employed with the companies of comparable size, value and reputation. Accordingly, the Debtor's decision to enter into the Engagement Contract reflects an exercise of the Debtor's sound business judgment.

Date: October 22, 2015

KLEIN, DeNATALE, GOLDNER,
COOPER, ROSENLIEB & KIMBALL, LLP

By /s/ Hagop T. Bedoyan
HAGOP T. BEDOYAN
Proposed Attorneys for Debtor-in-Possession