**18**

HAGOP T. BEDOYAN, CSB NO. 131285
JACOB L. EATON, CSB NO. 244834
LISA A. HOLDER, CSB NO. 217752
KLEIN, DENATALE, GOLDNER,
  COOPER, ROSENLIEB & KIMBALL, LLP
5260 N. Palm Avenue, Suite 201
Fresno, California 93704
Telephone: (559) 438-4374
Facsimile: (559) 432-1847
Email: hbedoyan@kleinlaw.com;
      jeaton@kleinlaw.com; lholder@kleinlaw.com

Proposed Attorneys for Debtor-in-Possession

# UNITED STATES BANKRUPTCY COURT

## EASTERN DISTRICT OF CALIFORNIA, FRESNO DIVISION

| | |
|---|---|
| In re:<br><br>CLUB ONE CASINO, INC.,<br><br>      Debtor-in-Possession. | Case No. 15-14017<br><br>Chapter 11<br><br>DC No. KDG-5<br><br>**DECLARATION OF BILL HUGHES IN SUPPORT OF DEBTOR'S MOTION PURSUANT TO SECTION 363 OF THE BANKRUPTCY CODE FOR ENTRY OF AN ORDER APPROVING THE ENGAGEMENT CONTRACT OF (I) MR. BILL HUGHES AS CHIEF RESTRUCTURING OFFICER OF THE DEBTOR AND (II) GLASSRATNER ADVISORY & CAPITAL GROUP, LLC TO ASSIST THE CRO**<br><br>Date: November 10, 2015<br>Time: 2:30 p.m.<br>Place: United States Bankruptcy Court<br>       2500 Tulare Street, Fifth Floor<br>       Department B, Courtroom 13<br>       Fresno, California<br>Judge: Honorable René Lastreto II |

///

3HD138702        1

1      I, BILL HUGHES, declare as follows:

2      I am the CRO of Club One Casino, Inc., the above-captioned debtor and debtor in possession (the "Debtor"), pursuant to the letter agreement (the "Engagement Contract") dated October 9, 2015, by and between the Debtor and GlassRatner Advisory & Capital Group, LLC ("GlassRatner", or the "Firm"). Except as otherwise indicated, all statements in this Declaration are based upon my personal knowledge and my review of the Debtor's books and records. If I were called to testify as a witness in this matter, I could and would competently testify to each of the facts set forth herein based upon my personal knowledge, review of documents, or opinion.

3      I submit this declaration in support of the *Debtor's Motion Pursuant to Section 363 of the Bankruptcy Code for Entry of an Order Approving the Engagement Contract of (i) Mr. Bill Hughes as Chief Restructuring Officer of the Debtor and (ii) GlassRatner Advisory & Capital Group, LLC to Assist the CRO* ("Motion").

**Background and Qualifications of CRO.** I am a senior managing director at GlassRatner with nearly 20 years of experience in the formation and evaluation of strategic restructuring alternatives, the development of plans of reorganization and the disposition of assets. I also have extensive experience in working on sales or other fundamental transactions in distressed situations of chapter 11 cases, including Section 363 asset sales. I graduated from Arizona State University where I majored in Accounting, and I am a licensed Certified Public Accountant in Arizona. I am also Certified Insolvency and Restructuring Advisor and received my credential as a Certified Fraud Examiner from the Association of Certified Fraud Examiners. In 2014, I was appointed by Governor Jan Brewer to the Maricopa County Commission on Trial Court Appointments to investigate, interview and evaluate applicants for judgeships.

I specialize in advising on bankruptcies, reorganizations and business restructurings and in providing expert witness testimony for issues including lost profit, fraud, cash collateral and valuation. The compensation arrangement reflected in the Engagement Contract is consistent with, and typical of, arrangements entered into by GlassRatner, myself, and other restructuring

management consulting experts with respect to rendering similar services for clients such as the Debtor.

I have served as a financial advisor in many bankruptcy-related matters. Some of the most notable engagements in which I was involved include: The Majestic Star Casino, LLC, Herbst Gaming, Inc., Integrated Health Services, Inc., Aladdin Gaming Holdings, LLC, and Resort at Summerlin, LP. I also served as a financial advisor to the Official Committee of Non-Bondholder Unsecured Creditors in re: *Hollywood Casino Shreveport et al.* as well as serving as a financial advisor to the Official Committee of Unsecured Creditors in the chapter 11 matter of GB Holdings, Inc., the former owner and operator of the Sands Hotel and Casino in Atlantic City.

Prior to joining GlassRatner, I held senior positions with XRoads Solutions Group, LLC; Mesirow Financial Consulting; and the Corporate Recovery practice of KPMG, LLP.

**Qualifications of GlassRatner.** GlassRatner is a national multi-office business advisory firm that was founded in 2001 and has eight offices in five states, including offices in Bakersfield, California. GlassRatner provides a broad range of corporate advisory services to its clients including, without limitation, services pertaining to: (i) general financial advice, (ii) mergers, acquisitions and divestitures, (iii) special committee assignments, (iv) capital raising and (v) corporate restructuring. GlassRatner and its senior professionals have extensive experience in providing financial advisory services to financially distressed companies and to creditors, equity holders, asset purchasers and other constituencies in reorganization proceedings and complex financial restructurings, both in- and out-of-court. Since 2002, GlassRatner has been involved in over 50 announced or completed restructurings representing in excess of $5 Billion of restructured liabilities. For instance, GlassRatner and its professionals are providing or have provided financial advisory, investment banking and other services in connection with the restructuring of: Crumbs Bake Shops, U.S. Coal, Sea Island Company and Southwest Recreational Industries.

GlassRatner and I have significant knowledge of the casino industry and will be in a positon to become familiar with the Debtor's financial affairs, debt structure, operations and

related matters. GlassRatner has developed relevant experience regarding the casino industry that will assist it in providing effective and efficient services to the Debtor in this Bankruptcy Case.

**Engagement Contract.** Pursuant to the Engagement Contract, I serve as Chief Restructuring Officer ("CRO"). I understand that my retention by Debtor as CRO is subject to approval of the Bankruptcy Court and the subject of this Motion.

A true and correct copy of the Engagement Contract attached hereto as **Exhibit 1**. Pursuant to the Engagement Contract, I will serve as CRO and will perform the services required of GlassRatner under the Engagement Contract. In addition, GlassRatner shall provide the services of other GlassRatner personnel at the direction of the CRO, but only with the consent of the Debtor. Such additional personnel will bill at their stated hourly rates (the "Additional Personnel"). I do not anticipate that I will require the assistance of Additional Personnel.

My retention as CRO is necessary to the successful administration of the Bankruptcy Case since some of the Debtor's principals are also principals of the Debtor's largest secured creditor, KMGI, Inc. ("KMGI") and the Debtor's parent, Club One Acquisition Corp. ("COAC"), which is also a debtor in a companion chapter 11 case pending before the Court (Case No. 15-14021-B-11). The Debtor requires the CRO and GlassRatner to provide the immediate services of an experienced CRO to guide existing management through a restructuring of the Debtor's operations and a successful resolution of its chapter 11 case. Further, any delay of the CRO's and GlassRatner's services could cause irreparable harm to the Debtor's estate.

GlassRatner and I will assist management in evaluating strategic alternatives, communicating with the Debtor's stakeholders, and providing business plan analysis for the purpose of ultimately assisting in the preparation of a plan of reorganization and disclosure statement to maximize value for the estate. Without such services, it would be difficult, if not impossible, for the Debtor to gather and analyze the financial information necessary to its

reorganization and the preparation of a disclosure statement that complies with the requirements of section 1125 of the Bankruptcy Code.

The duties and powers of the CRO are enumerated in the Engagement Contract and are as follows:

1. The CRO shall be an officer of the Debtor and shall have the duties similar to that of a Chief Executive Officer including, but not limited to: (a) assisting in all aspects of the Debtor's business activities and operations, including budgeting, cash management and financial management; (b) negotiations regarding the relationship with the Debtor's lenders, and investors (c) negotiations with vendors, customers and other creditors (d) hiring and terminating of employees of the Debtor (see limitation in Par. 2), (e) review of daily operating activity, (f) evaluating liquidity options including restructuring, refinancing and reorganizing; (g) reviewing purchases and expenses and (h) acting as the Debtor's representative in court hearings as appropriate.

2. The CRO understands that the Debtor has engaged the law firm of Klein DeNatale Goldner as its counsel ("KDG"), and that the powers of the CRO do not include the power to terminate KDG or to terminate the shareholder employees. Only the Board can vote to terminate a shareholder employee or replace KDG.

3. The CRO shall assist the Debtor in pursuing a refinancing or restructuring of the obligations due the Debtor's secured lender which may include solicitation of multiple capital sources but shall only be involved in any refinancing efforts or negotiations to the extent requested by the Board of Directors.

4. The CRO shall assist the Debtor in evaluating and executing restructuring alternatives.

5. The CRO shall not have authority over (a) approving a sale of substantially all the assets of the Debtor; and, (b) causing the Debtor to commence a proceeding under Chapter 11 of the Bankruptcy Code or to take such other judicial action

with respect to the Debtor. Again these activities would require Board approval and appropriate Board resolutions.

6. The CRO, who shall not be a director of the Board, shall report to the Board of the Debtor provided, however, that the CRO shall not require the consent or approval of the Board to take action (or elect not to take action) in such officer's capacity as CRO; provided further, however, the CRO shall routinely consult and provide the Board with the status of actions which have been initiated and/or actions which are being planned but not yet initiated.

Notwithstanding anything in the Engagement Contract to the contrary, the Debtor is permitted to indemnify those persons serving as corporate officers on the same terms as provided to the Debtor's other officers and directors under the corporate by-laws and applicable state law. There shall be no other indemnification of GlassRatner or its affiliates, except for me.

Notwithstanding any provisions of the Engagement Contract to the contrary, consistent with the "Jay Alix Protocol" implemented by the Office of the United States Trustee, GlassRatner and I agree that:

> **In the event the Debtor seeks to have any of the Additional Personnel assume executive officer positions other than Mr. Hughes, or to materially change the terms of the engagement by modifying the functions of the executive officer personnel, a motion to modify the employment as such will be filed.**
>
> **No principal, employee, or independent contractor of GLASSRATNER and its affiliates will serve as a director of the Debtor during the pendency of the Debtor's chapter 11 case.**
>
> **For a period of three (3) years after the conclusion of the engagement, neither GlassRatner nor any of its affiliates will make any investments in the Debtor.**

**Compensation and Proposed Payment.** The Debtor and GlassRatner have agreed to the proposed compensation and payment structure summarized below and set forth in detail in the Engagement contract (the "<u>Fee Structure</u>"):

(a) <u>Hourly Fee</u>: The Debtor has agreed to pay the CRO at the rate of $375.00 per hour subject to a monthly maximum on fees billed each month ("Monthly Cap") for the services of the CRO outlined in the Engagement Contract. The Monthly Cap for the first month of the engagement will be $25,000.00, and $15,000.00 per month thereafter.

The Engagement Contract can be terminated by either party with 30 days written notice. Payment will be due following entry of an order approving the Services Agreement between the Debtor and GlassRatner and on the 1st of each month thereafter. It is contemplated that the CRO will average approximately fifteen (15) hours per week during the first month and ten (10) hours per week thereafter. Travel time shall be compensated at 25% of the stated hourly rate.

    (b)   <u>Fees in Excess of Monthly Cap</u>: Should GlassRatner or CRO incur fees during any specific month that exceed the Monthly Cap, ("Unbilled Fees"), such fees shall be treated as follows:

        <u>i.</u>   50% of the Unbilled Fees shall be carried over and billed in the month immediately following, and

        <u>ii.</u>   50% of the Unbilled Fees shall be permanently written off by GlassRatner.

    (c)   <u>Hourly Rate</u>: At the present time, GlassRatner does not anticipate the need for Additional Personnel to assist the CRO. If Additional Personnel is required, GlassRatner will provide a supplemental declaration to this Motion.

    (d)   <u>Cash on Account</u>: The Debtor did not make any deposit or pay any retainer to GlassRatner before the commencement of the case.

In addition to the hourly rates set forth above, the Debtor shall reimburse both GlassRatner and the CRO respectively for all reasonable out-of-pocket expenses incurred in connection with this engagement such as travel, lodging, telephone and facsimile charges. Further, should GlassRatner provide litigation support consulting or forensic accounting, those services will be billed in addition to the CRO services.

GlassRatner shall file with the Court, with copies to the United States Trustee and all official committees, a monthly report of staffing on the engagement for the previous month. Such report shall include the names and functions filled of the individuals assigned. All staffing shall be subject to review by the Court in the event an objection is filed.

GlassRatner shall file with the Court (and serve copies on the United States Trustee and any official committees appointed in this case contemporaneously with such filing) reports of compensation earned and expenses incurred on at least a quarterly basis. Such reports shall contain summary charts which describe services provided, identify the compensation earned by each executive officer and staff employee provided, and itemize the expenses incurred. Time records for all GlassRatner Additional Personnel other than the CRO shall (i) be appended to

1   the reports, (ii) contain detailed time entries describing the task(s) performed, and (iii) be
2   organized by project category. When GlassRatner personnel are providing services at an
3   hourly rate, such personnel shall record their time entries in increments of no greater than one-
4   tenth hour (.1). All compensation shall be subject to review by the Court in the event an
5   objection is filed. The first quarterly report will be submitted forty-five (45) days from the end
6   of the first calendar quarter after the Petition Date and will cover the period to and including
7   the last day of the first quarter after the Petition Date. This procedure will continue at three
8   month intervals thereafter. Because GlassRatner is not being employed as a professional under
9   section 327 of the Bankruptcy Code, it will not be submitting regular fee applications pursuant
10  to sections 330 and 331 of the Bankruptcy Code. GlassRatner will, however, submit certain
11  reports described above.
12          **Connections to Debtor, creditors, or other parties.** GlassRatner has performed a
13  detailed conflict check and, to the best of my knowledge, does not hold any interest adverse to
14  the interests of the Debtor's estate except as follows:
15      A. **Connections with the Court.** Other than GlassRatner working with debtors and
16         creditor committees in cases pending before Bankruptcy Courts throughout the
17         country in cases unrelated to Debtor, GlassRatner does not have any connections to
18         the Court.
19      B. **Connections to Office of the United States Trustee.** Other than working with the
20         United States Trustee and person employed by the Office of the United States
21         Trustee ("UST") in connection with proceedings and other matters unrelated to
22         Debtor, there are no known connections to the United States Trustee, or any person
23         employed by the Office of the United States Trustee.
24      C. **Connections with Other Proposed Professionals of the Debtor.** Other than
25         working with the other proposed professionals of the Debtor in connection with this
26         proceeding and other matters unrelated to Debtor, there are no known connections
27         to the other professionals except,
28         i.  *Klein, DeNatale, Goldner ("KDG") – Proposed General Insolvency Counsel for Debtor.* KDG has previously employed GlassRatner as business advisors

and accountants in cases unrelated to Debtor. Additionally, George Demos of GlassRatner has worked, and is working, with KDG on other matters unrelated to Debtor. GlassRatner and KDG, on a non-exclusive basis, occasionally refer clients to each other when their respective client needs professional services that the other provides. There is no agreement between GlassRatner and KDG regarding referrals and no referral fees nor any kind of financial remuneration is paid between GlassRatner and KDG. Further, KDG subleases space to GlassRatner and has entered into a month-to-month written lease agreement for $250/month at the Bakersfield location.

  ii. *Milbank, Tweed, Hadley, and McCloy("MTHM") – Proposed Special Counsel for Debtor.* GlassRatner has done business in the past with MTHM in matters unrelated to Debtor. Because of the nature of the business conducted by GlassRatner including, but not limited to, assisting distressed business, financial restructuring, forensic accounting, litigation support, and CRO services, GlassRatner has been employed by parties represented by MTHM and parties adverse to parties represented by MTHM.

D. **Connections with Debtor, Insiders, and Affiliates.** Other than working with the Debtor, Insiders, and Affiliates of the Debtor in connection with this proceeding, there are no known connections to the Debtor, insiders, and affiliates except,

  i. *Debtor.* Debtor retained GlassRatner on October 9, 2015, pursuant to the Engagement Contract.

E. **Connections with Creditors and Creditors' Attorneys.** Other than working with the creditors of Debtor and their attorneys in connection with this proceeding, there are no known connections to the creditors and their attorneys except as follows:

  i. *Puchulski Stang Ziehl & Jones, LLP ("Puchulski")* – Counsel for Secured Creditor, KMGI, Inc. GlassRatner has done and currently does business with Puchulski in matters unrelated to Debtor. Because of the nature of the business conducted by GlassRatner including, but not limited to, assisting distressed business, financial restructuring, forensic accounting, litigation support, and CRO services, GlassRatner has been employed by parties represented by Puchulski and parties adverse to parties represented by Puchulski.

GlassRatner has agreed not to share with any person or entity any compensation received by it in the Debtor's case, except as among the members, associates, and employees of GlassRatner. Neither GlassRatner, nor any of its principals, employees, agents or affiliates has any connection with the Debtor, its creditors, the United States Trustee or any other party with an actual or potential interest in the Bankruptcy Case or their respective attorneys or accountants.

| | |
|---|---|
| 1 | From time to time, GlassRatner has provided services, and likely will continue to |
| 2 | provide services, to certain creditors of the Debtor and various other parties adverse to the |
| 3 | Debtor in matters unrelated to the Bankruptcy Case. |
| 4 | These unrelated matters involve numerous attorneys, financial advisors, and creditors, |
| 5 | some of whom may be claimants or parties with actual or potential interests in this case or may |
| 6 | represent such parties. |
| 7 | GlassRatner personnel and their family members may have business associations with |
| 8 | certain creditors of the Debtor unrelated to the Bankruptcy Case. Additionally, in the ordinary |
| 9 | course of its business, GlassRatner may engage counsel or other professionals in unrelated |
| 10 | matters who now represent, or who may in the future represent, creditors, or other interested |
| 11 | parties in the Bankruptcy Case. |
| 12 | The Debtor maintains business relationships with numerous shareholders, lenders, |
| 13 | creditors and other parties. GlassRatner may have advisory or other commercial or |
| 14 | professional relationships with such entities or persons completely unrelated to the Debtor or its |
| 15 | business affairs. No such relationships are in any way related to the Bankruptcy Case. |
| 16 | Because the Debtor is a large enterprise with numerous creditors and other |
| 17 | relationships, and because GlassRatner is a large enterprise, GlassRatner and I are unable to |
| 18 | state with certainty that every client relationship or other connection has been disclosed. In this |
| 19 | regard, if GlassRatner or I discover additional information that requires disclosure, GlassRatner |
| 20 | will file a supplemental disclosure with the Court. |
| 21 | GlassRatner has not been retained to assist any entity or person other than the Debtor on |
| 22 | matters relating to, or in connection with, the Bankruptcy Case. If this Court approves the |
| 23 | proposed employment of GlassRatner by the Debtor, GlassRatner will not accept any |
| 24 | engagement or perform any services for any entity or person other than the Debtor in the |
| 25 | Bankruptcy Case. GlassRatner will, however, continue to provide professional services to, and |
| 26 | engage in commercial or professional relationships with, entities or persons that may be |
| 27 | creditors of the Debtor or parties in interest in the Bankruptcy Case, provided, however, that |
| 28 | such services do not relate to, or have any direct connection with, the Bankruptcy Case. |

GlassRatner is not owed any amounts by Debtor for services performed or expenses incurred prior to the Petition Date and thus GlassRatner is not a prepetition creditor of the Debtor.

Accordingly, I believe that GlassRatner is a "disinterested person" as defined in section 101(14) of the Bankruptcy Code.

**Indemnification.** The Engagement Contract contains standard indemnification and limitation of liability language with respect to GlassRatner's services. Notwithstanding any provisions of the Engagement Contract to the contrary, in accordance with the Protocol, GlassRatner has agreed otherwise, as set forth below.

With respect to me in my capacity as CRO, the Debtor shall indemnify me, as CRO, on the same terms as provided to the Debtor's directors under the Debtor's by-laws and applicable state law.

With respect to the Additional Personnel, the Debtor shall have no obligation to indemnify GlassRatner or to provide contribution or reimbursement to GlassRatner for any claim or expense that is either (a) judicially determined to have resulted primarily from the willful misconduct, gross negligence, bad faith or self-dealing of GlassRatner; or (b) settled prior to a judicial determination as to GlassRatner's willful misconduct, gross negligence, bad faith or self-dealing but determined by the Court, after notice and a hearing, to be a claim or expense for which GlassRatner should not receive indemnity, contribution or reimbursement under the terms of the Engagement Contract.

GlassRatner and I understand that should GlassRatner believe that it is entitled to the payment of any amounts by the Debtor on account of the Debtor's indemnification with respect to the Additional Personnel, including without limitation the advancement of defense costs, before the earlier of (a) the entry of an order confirming a chapter 11 plan in this Bankruptcy Case (that order having become a final order no longer subject to appeal) and (b) the entry of an order closing, dismissing or converting this chapter 11 case, GlassRatner must file an application to this Court seeking such payment, and the Debtor may not pay any such amounts to GlassRatner before the entry of an order by this Court approving the payment; provided,

however, that the foregoing is intended only to specify the period of time during which the Court shall have jurisdiction over any request for indemnification by GlassRatner, and is not a provision limiting the duration of the Debtor's obligation to indemnify GlassRatner.

Finally, notwithstanding any provisions of the Engagement Contract to the contrary, GlassRatner and I have agreed not to raise or assert any defense based upon jurisdiction, venue, abstention or otherwise to the jurisdiction and venue of this Court to hear or determine any controversy or claims with respect to, in connection with, arising out of, or in any way related to GlassRatner's engagement in this Bankruptcy Case.

The terms and conditions of the Engagement Contract were negotiated by the Debtor and GlassRatner at arm's length and in good faith. GlassRatner and I have extensive experience providing management and financial services to distressed companies and those involved in the gaming industry.

For all of the foregoing reasons, I respectfully request that the Court grant the relief requested in the Motion filed concurrently herewith.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed this 22nd day of October, 2015 in Phoenix, Arizona.

*/s/ Bill Hughes*
BILL HUGHES

ORIGINAL



GLASSRATNER

# CHIEF RESTRUCTURING OFFICER
# ENGAGEMENT LETTER AGREEMENT

October 9, 2015

<u>Via Electronic Mail Delivery</u>

Kyle Kirkland
Club One Casino, Inc.
1033 Van Ness Avenue
Fresno, CA 93721

RE: **Engagement of GlassRatner Advisory & Capital Group, LLC as the Chief Restructuring Officer for Club One Casino, Inc. (the "Company")**

Dear Kyle,

This letter confirms and sets forth the terms and conditions of the engagement between GlassRatner Advisory & Capital Group, LLC ("GlassRatner") and the Company, including the scope of the services to be performed and the basis of compensation for those services. Upon execution of this letter by each of the parties below, this letter will constitute an agreement between the Company and GlassRatner.

1. <u>Description of Services</u>

    a. <u>Officers</u>. In connection with this engagement, GlassRatner shall make available to the Company Bill Hughes to serve as the Chief Restructuring Officer of the Company (the "CRO"). In addition, GlassRatner shall provide the services of other GlassRatner personnel at the direction of the CRO, but only with the consent of the Company. Other staff will bill at their standard hourly rates.

    b. <u>Duties and Powers</u>.

        (i) The CRO shall be an officer of the Company and shall have the duties similar to that of a Chief Executive Officer including, but not limited to: (a) assisting in all aspects of the Company's business

Page 1

Exhibit __1__

Page __13__

        activities and operations, including budgeting, cash management and financial management; (b) negotiations regarding the relationship with the Company's lenders, and investors (c) negotiations with vendors, customers and other creditors (d) hiring and terminating of employees of the Company (see limitation in (ii)), (e) review of daily operating activity, (f) evaluating liquidity options including restructuring, refinancing and reorganizing; (g) reviewing purchases and expenses and (h) acting as the Company representative in court hearings as appropriate.

  (ii)    The CRO understands that the Company has engaged the law firm of Klein DeNatale Goldner as its counsel ("Counsel"), and that the powers of the CRO do not include the power to terminate Counsel or to terminate the Shareholder Employees. Only the Board can vote to terminate a Shareholder Employee or replace Counsel to the Company.

  (iii)    The CRO shall assist the Company in pursuing a refinancing or restructuring of the obligations due the Company's secured lender which may include solicitation of multiple capital sources but shall only be involved in any refinancing efforts or negotiations to the extent requested by the Board of Directors.

  (iv)    The CRO shall assist the Company in evaluating and executing restructuring alternatives.

  (iv)    The CRO shall not have authority over (a) approving a sale of substantially all the assets of the Company; and, (b) causing the Company to commence a proceeding under Chapter 11 of the Bankruptcy Code or to take such other judicial action with respect to the Company. Again these activities would require Board approval and appropriate Board resolutions.

c.    <u>Reporting</u>. The CRO shall report to the Board of the Company provided, however, that the CRO shall not require the consent or approval of the Board to take action (or elect not to take action) in such officer's capacity as CRO; provided further, however, the CRO shall routinely consult and provide the Board with the status of actions which have been initiated and/or actions which are being planned but not yet initiated.

d.    <u>Employment by GlassRatner.</u> The CRO will continue to be employed by GlassRatner and while rendering services to the Company continue to work with other personnel at GlassRatner in connection with other unrelated matters, which will not unduly interfere with services pursuant to this engagement. With respect to the Company, however, the CRO shall operate pursuant to the terms of this Agreement.

e.    <u>Projections; Reliance; Limitation of Duties</u>. You understand that the services to be rendered by the CRO may include the preparation of projections and other forward-looking statements, and that numerous factors can affect the actual results of the Company's operations, which

may materially and adversely differ from those projections and other forward-looking statements. In addition, the CRO will be relying on information provided by other members of the Company's management in the preparation of those projections and other forward-looking statements. Neither the CRO nor GlassRatner makes any representation or guarantee that a refinancing of obligations to the Company's secured lender will occur, or that the Company's secured lender will continue to provide financing or that the business will achieve or not achieve a particular result. Further, that any restructuring plan formulated for the Company, or selected by the CRO, will be more successful than all other possible restructuring alternatives or that any proposed restructuring alternative will be accepted by any of the Company's creditors and other constituents.

2. Compensation

   a. GlassRatner will be paid by the Company for the services of the CRO at $375 per hour for the services of Bill Hughes.

   b. Travel time incurred by the CRO in connection with this engagement shall be billed at 25% of the stated hourly rate.

   c. Such compensation shall be subject to a monthly maximum on fees billed to the Company (the "Monthly Cap") each month. Any fees incurred by GlassRatner during a specific month that exceed the applicable Monthly Cap (the "Unbilled Fees") shall be treated as follows:

      i. 50% of the Unbilled Fees shall be carried over and billed in the month immediately following, and

      ii. 50% of the Unbilled Fees shall be permanently written off by GlassRatner.

   d. The applicable Monthly Cap for each month shall be as follows:

      i. Month 1 = $25,000

      ii. Month 2 and each month thereafter = $15,000

   e. The Company and GlassRatner agree to use reasonable efforts to assess the Monthly Cap, periodically, after the engagement has commenced to determine if any adjustment to the Monthly Cap is warranted.

   f. In addition, GlassRatner will be reimbursed by the Company for the reasonable out-of-pocket expenses of the CRO.

   g. Further, if GlassRatner provides litigation support consulting or forensic accounting, those services will be billed in addition to the CRO services.

3. Termination - This Agreement can be terminated by either party with 30 days written notice. Any professional services provided during the period after notice but before the end of the term are the liability of the Company.

Page 3

Exhibit ___1___

Page ___15___

4. No Audit, Duty to Update

It is understood that the CRO and GlassRatner are not being requested to perform an audit, review or compilation, or any other type of financial statement reporting engagement that is subject to the rules of the AICPA, SEC or other state or national professional or regulatory body. They are entitled to rely on the accuracy and validity of the data disclosed to them or supplied to them by employees and representatives of the Company. The CRO and GlassRatner are under no obligation to update data submitted to them or review any other areas.

5. No Third Party Beneficiary.

The Company acknowledges that all advice (written or oral) given by GlassRatner to the Company in connection with this engagement is intended solely for the benefit and use of the Company (limited to the shareholders of the Company and management) in considering the matters to which this engagement relates. The Company agrees that no such advice shall be used for any other purpose or reproduced, disseminated, quoted or referred to at any time in any manner or for any purpose other than accomplishing the tasks referred to herein without GlassRatner's prior approval (which shall not be unreasonably withheld), except as required by law.

6. Conflicts.

GlassRatner is not currently aware of any relationship that would create a conflict of interest with the Company or those parties-in-interest of which you have made us aware. Because GlassRatner is a consulting firm that serves Companies on an international basis in numerous cases, both in and out of court, it is possible that GlassRatner may have rendered services to or have business associations with other entities or people which had or have or may have relationships with the Company, including creditors of the Company.

7. Confidentiality / Non-Solicitation.

The CRO and GlassRatner shall keep as confidential all non-public information received from the Company in conjunction with this engagement, except (i) as requested by the Company or its legal counsel; (ii) as required by legal proceedings or (iii) as reasonably required in the performance of this engagement. All obligations as to non-disclosure shall cease as to any part of such information to the extent that such information is or becomes public other than as a result of a breach of this provision.

8. Indemnification.

The Company shall indemnify GlassRatner and the CRO to the same extent as the most favorable indemnification it extends to its officers or directors, whether under the Company' bylaws, its certificate of incorporation, or otherwise, and no reduction or termination in any of the benefits provided under any such

Page 4

Exhibit 1

Page 16

indemnities shall affect the benefits provided to GlassRatner and the CRO. The CRO shall be covered as an officer under the Company's existing director and officer liability insurance policies if such policy is in effect and the Company shall also maintain any such insurance coverage for the CRO for a period of not less than two years following the date of the termination of such officer's services hereunder. The attached indemnity provisions are incorporated herein and the termination of this agreement or the engagement shall not affect those provisions, which shall survive termination. The provisions of this section 8 are in the nature of contractual obligations and no change in applicable law or the Company' charter, bylaws, or other organizational documents or policies shall affect the CRO's or GlassRatner's rights hereunder.

To the extent that the Company, through its insurance company or otherwise, is unable to pay any indemnification claims of GlassRatner and the CRO, the secured lender, KMGI, Inc. will guarantee such indemnification.

9. <u>Miscellaneous</u>.

This Agreement shall (together with the attached indemnity provisions) be: (a) governed and construed in accordance with the laws of California, regardless of the laws that might otherwise govern under applicable principles of conflict of laws thereof; (b) incorporates the entire understanding of the parties with respect to the subject matter thereof; and (c) may not be amended or modified except in writing executed by each of the signatories hereto. The Company and GlassRatner agree to waive trial by jury in any action, proceeding or counterclaim brought by or on behalf of the parties hereto with respect to any matter relating to or arising out of the performance or non-performance of the Company or GlassRatner hereunder.

If the foregoing is acceptable to you, kindly sign the enclosed copy to acknowledge your agreement with its terms.

Very truly yours,

**GLASSRATNER ADVISORY & CAPITAL GROUP, LLC,** a Georgia Limited Liability Company

By: _[signature]_
Name: _____ 10/9/2015

Accepted and Agreed:

_[signature]_
Authorized Member of Board of Directors

Exhibit ___1___

Page ___17___

Page 5

## ADDITIONAL INDEMNITY PROVISION

Club One Casino, Inc. (the "Company") agrees to indemnify and hold harmless each of GlassRatner Advisory & Capital, LLC ("GlassRatner"), GlassRatner's shareholders, officers, employees, agents, representatives and subcontractors (each, an "Indemnified Party" and collectively, the "Indemnified Parties") against any and all losses, claims, damages, liabilities, penalties, obligations and expenses, including the costs for counsel or others (including employees of GlassRatner, based on their then current hourly billing rates) in investigating, preparing or defending any action or claim, whether or not in connection with litigation in which any Indemnified Party is a party, or enforcing the Agreement (including these indemnity provisions), as and when incurred, caused by, relating to, based upon or arising out of (directly or indirectly) the Indemnified Parties' acceptance of or the performance or nonperformance of their obligations under the Agreement; provided, however, such indemnity shall not apply to any such loss, claim, damage, liability or expense to the extent it is found in a final judgment by a court of competent jurisdiction (not subject to further appeal) to have resulted from such Indemnified Party's gross negligence or willful misconduct. The Company also agrees that no Indemnified Party shall have any liability (whether direct or indirect, in contract or tort or otherwise) to the Company for or in connection with the engagement of GlassRatner, except to the extent that any such liability for losses, claims, damages, liabilities or expenses are found in a final judgment by a court of competent jurisdiction (not subject to further appeal) to have resulted from such Indemnified Party's gross negligence or willful misconduct. The Company further agrees that it will not, without the prior consent of an Indemnified Party, settle or compromise or consent to the entry of any judgment in any pending or threatened claim, action, suit or proceeding in respect of which such Indemnified Party seeks indemnification hereunder (whether or not such Indemnified Party is an actual party to such claim, action, suit or proceedings) unless such settlement, compromise or consent includes an unconditional release of such Indemnified Party from all liabilities arising out of such claim, action, suit or proceeding.

Exhibit 1

Page 18

Page 6