**10**

HAGOP T. BEDOYAN, CSB NO. 131285
JACOB L. EATON, CSB NO. 244834
LISA A. HOLDER, CSB NO. 217752
KLEIN, DENATALE, GOLDNER,
  COOPER, ROSENLIEB & KIMBALL, LLP
5260 N. Palm Avenue, Suite 201
Fresno, California 93704
Telephone: (559) 438-4374
Facsimile: (559) 432-1847
Email: hbedoyan@kleinlaw.com;
      jeaton@kleinlaw.com; lholder@kleinlaw.com

Proposed Attorneys for Debtor-in-Possession

## UNITED STATES BANKRUPTCY COURT

## EASTERN DISTRICT OF CALIFORNIA, FRESNO DIVISION

| | |
|---|---|
| In re:<br><br>CLUB ONE CASINO, INC.,<br><br>        Debtor-in-Possession. | Case No. 15-14017<br><br>Chapter 11<br><br>DC No. KDG-5<br><br>**DECLARATION OF KYLE R. KIRKLAND IN SUPPORT OF DEBTOR'S MOTION PURSUANT TO SECTION 363 OF THE BANKRUPTCY CODE FOR ENTRY OF AN ORDER APPROVING THE ENGAGEMENT CONTRACT OF (I) MR. BILL HUGHES AS CHIEF RESTRUCTURING OFFICER OF THE DEBTOR AND (II) GLASSRATNER ADVISORY & CAPITAL GROUP, LLC TO ASSIST THE CRO**<br><br>Date: November 10, 2015<br>Time: 2:30 p.m.<br>Place: United States Bankruptcy Court<br>       2500 Tulare Street, Fifth Floor<br>       Department B, Courtroom 13<br>       Fresno, California<br>Judge: Honorable René Lastreto II |

1   I, KYLE R. KIRKLAND, hereby declare and represent as follows:

2   I am the president, secretary, treasurer, and director of Club One Casino, Inc., debtor
3   and debtor-in-possession ("Debtor"). Debtor's management is in possession of Debtor and
4   continues its management post-petition as "Debtor-in-Possession." I am over eighteen years
5   of age.

6   I have personal knowledge of the information set forth herein and base the statements
7   made in this declaration on the information available to me and my belief. I am authorized to
8   make this Declaration in support of the *Debtor's Motion Pursuant to Section 363 of the*
9   *Bankruptcy Code for Entry of an Order Approving the Engagement Contract of (i) Mr. Bill*
10  *Hughes as Chief Restructuring Officer of the Debtor and (ii) GlassRatner Advisory & Capital*
11  *Group, LLC to Assist the CRO* ("Motion").

12  In the Motion, Debtor seeks entry of an order approving the letter agreement (the
13  "Engagement Contract") dated October 9, 2015, by and between the Debtor and GlassRatner
14  Advisory & Capital Group, LLC ("GlassRatner", or the "Firm"). Pursuant to the Engagement
15  Contract, Bill Hughes ("Mr. Hughes") will serve as Chief Restructuring Officer ("CRO"). In
16  addition, GlassRatner shall provide the services of other GlassRatner personnel at the direction
17  of the CRO, but only with the consent of the Debtor. Such additional personnel will bill at their
18  stated hourly rates (the "Additional Personnel"). In support of this Motion, the Debtor submits
19  the Declaration of Hughes (the "Hughes Declaration"), and further respectfully represents as
20  follows:

21  **Background of Debtor.** On October 14, 2015 (the "Petition Date"), the Debtor filed a
22  voluntary petition for relief under chapter 11 of title 11 of the United States Code (the
23  "Bankruptcy Code"). The Debtor continues to operate and manage its affairs as a debtor in
24  possession. No trustee, examiner, or committee has been appointed in this chapter 11 case.

25  Debtor was incorporated on March 28, 1994, for the purpose of operating an
26  entertainment complex located in central Fresno called Club One Casino. Club One Casino
27  began operation in November 1995 and includes a gaming facility, bar, restaurant and banquet
28  facilities, administration, satellite wagering, and security offices. The gaming facility includes

51 card-tables contained in designated settings that allow patrons to engage in various table games as allowed under state law. Over its two decades in business, the Debtor has grown to become a significant community presence, a substantial taxpayer and a major employer in the Fresno area: it currently has about 280 active employees with a semi-monthly gross payroll of approximately $265,000.00.

Since 2008, the Debtor has suffered from litigation generated by its former owners – George Sarantos ("Sarantos") and Elaine Long ("Elaine"). Sarantos and Elaine - who already have received over $22 million in cash, and subordinated unsecured notes with current balances totaling approximately $4,150,000.00 each, from their sale of the Club One Casino to the Debtor's current ownership - are seeking an additional $2.7 million. Despite the best efforts of the Debtor and its ownership to resolve disputes with Sarantos and Long on a consensual basis, the former owners continue to pursue aggressive collection efforts against Club One Casino. Sarantos, together with certain former employees of the Debtor and others, also engaged in activities to harm the Debtor by using unlawful financing to relocate and expand a competitor to Club One Casino, called the Clovis 500 Club.

The Debtor and its parent holding company were forced to commence their Chapter 11 cases in order to forestall Sarantos and Long's attempts to obtain the appointment of a receiver over Club One Casino, to preserve its on-going business operations and to address financial challenges to its business precipitated by unlawful competition from Clovis 500 Club by restructuring its debts through the reorganization process.

**The Engagement Contract and its terms**. Pursuant to the Engagement Contract, Mr. Hughes will serve as CRO and the Additional Personnel will perform other services required of GlassRatner under the Engagement Contract.

I believe that Debtor's relief requested herein is necessary to the successful administration of the Bankruptcy Case since some of the Debtor's principals are also principals of the Debtor's largest secured creditor, KMGI, Inc. ("KMGI") and the Debtor's parent, Club One Acquisition Corp. ("COAC"), which is also a debtor in a companion chapter 11 case pending before the Court (Case No. 15-14021-B-11). The Debtor requires the CRO and

GlassRatner to immediately begin providing services of an experienced CRO to guide existing management through a restructuring of the Debtor's operations and a successful resolution of its chapter 11 case. Further, I believe that any delay of the CRO's and GlassRatner's services could cause irreparable harm to the Debtor's estate.

Mr. Hughes and GlassRatner will assist management in evaluating strategic alternatives, communicating with the Debtor's stakeholders, and providing business plan analysis for the purpose of, ultimately, assisting the in the preparation of a plan of reorganization and disclosure statement to maximize value for the estate. Without such services, it would be difficult, if not impossible, for the Debtor to gather and analyze the financial information necessary to its reorganization and the preparation of a disclosure statement that complies with the requirements of section 1125 of the Bankruptcy Code.

The Debtor has determined that obtaining the services of a CRO and other personnel with casino turnaround and chapter 11 experience will enhance its ability to (a) operate and meet its administrative obligations in this Bankruptcy Case and (b) preserve and maximize the value of its assets pending any sale. The Debtor and I have reviewed the qualifications of Mr. Hughes and GlassRatner, and the Debtor has chosen to utilize GlassRatner personnel as appropriate and has appointed Mr. Hughes, of GlassRatner, to the position of CRO, subject to the Court granting this Motion.

I am aware that GlassRatner and Mr. Hughes have significant knowledge of the casino industry and will be in a positon become familiar with the Debtor's financial affairs, debt structure, operations and related matters. The Debtor and I believe that GlassRatner is qualified to advise and assist the Debtor in connection with a successful restructuring that will maximize value for stakeholders. I am also aware that GlassRatner has developed relevant experience regarding the casino industry that will assist it in providing effective and efficient services to the Debtor in this Bankruptcy Case. The Debtor has selected GlassRatner based on its experience and expertise in providing financial advisory services in Chapter 11 cases throughout the country.

As such, the Debtor and I believe that GlassRatner is able to advise it in a cost-effective, efficient and timely manner. The Debtor has been advised by GlassRatner that it will endeavor to coordinate with the other professionals retained in this Bankruptcy Case to eliminate unnecessary duplication or overlap of work. Therefore, the Debtor submits that the retention and employment of GlassRatner is in the best interests of its estate, creditors and other stakeholders in this Bankruptcy Case.

By this Motion, the Debtor seeks an order authorizing the employment of GlassRatner to provide CRO services as described in the Engagement Contract (the "Services").

The duties and powers of the CRO are enumerated in the Engagement Contract and are as follows:

1. The CRO shall be an officer of the Debtor and shall have the duties similar to that of a Chief Executive Officer including, but not limited to: (a) assisting in all aspects of the Debtor's business activities and operations, including budgeting, cash management and financial management; (b) negotiations regarding the relationship with the Debtor's lenders, and investors (c) negotiations with vendors, customers and other creditors (d) hiring and terminating of employees of the Debtor (see limitation in Par. 2), (e) review of daily operating activity, (f) evaluating liquidity options including restructuring, refinancing and reorganizing; (g) reviewing purchases and expenses and (h) acting as the Debtor's representative in court hearings as appropriate.

2. The CRO understands that the Debtor has engaged the law firm of Klein DeNatale Goldner as its counsel ("KDG"), and that the powers of the CRO do not include the power to terminate KDG or to terminate the shareholder employees. Only the Board can vote to terminate a shareholder employee or replace KDG.

3. The CRO shall assist the Debtor in pursuing a refinancing or restructuring of the obligations due the Debtor's secured lender which may include solicitation of

multiple capital sources but shall only be involved in any refinancing efforts or negotiations to the extent requested by the Board of Directors.

4. The CRO shall assist the Debtor in evaluating and executing restructuring alternatives.

5. The CRO shall not have authority over (a) approving a sale of substantially all the assets of the Debtor; and, (b) causing the Debtor to commence a proceeding under Chapter 11 of the Bankruptcy Code or to take such other judicial action with respect to the Debtor. Again these activities would require Board approval and appropriate Board resolutions.

6. The CRO, who shall not be a director of the Board, shall report to the Board of the Debtor provided, however, that the CRO shall not require the consent or approval of the Board to take action (or elect not to take action) in such officer's capacity as CRO; provided further, however, the CRO shall routinely consult and provide the Board with the status of actions which have been initiated and/or actions which are being planned but not yet initiated.

Notwithstanding anything in the Engagement Contract to the contrary, the Debtor is permitted to indemnify those persons serving as corporate officers on the same terms as provided to the Debtor's other officers and directors under the corporate by-laws and applicable state law. There shall be no other indemnification of GlassRatner or its affiliates. Accordingly, as part of this Motion, the Debtor requests that the Court approve the indemnification provisions as set forth therein as modified by the above language.

Notwithstanding any provisions of the Engagement Contract to the contrary, consistent with the "Jay Alix Protocol" implemented by the Office of the United States Trustee, Mr. Hughes and GlassRatner agree that:

> **In the event the Debtor seeks to have any of the Additional Personnel assume executive officer positions other than Mr. Hughes, or to materially change the terms of the engagement by modifying the functions of the executive officer personnel, a motion to modify the employment as such will be filed.**

**No principal, employee, or independent contractor of GLASSRATNER and its affiliates will serve as a director of the Debtor during the pendency of the Debtor's chapter 11 case.**

**For a period of three (3) years after the conclusion of the engagement, neither GlassRatner nor any of its affiliates will make any investments in the Debtor.**

The Debtor and GlassRatner have agreed to the proposed compensation and payment structure summarized below and set forth in detail in the Engagement contract (the "<u>Fee Structure</u>"):

(a) <u>Hourly Fee</u>: The Debtor has agreed to pay the CRO at the rate of $375.00 per hour subject to a monthly maximum on fees billed each month ("Monthly Cap") for the services of the CRO outlined in the Engagement Contract. The Monthly Cap for the first month of the engagement will be $25,000.00, and $15,000.00 per month thereafter. The Engagement Contract can be terminated by either party with 30 days written notice. Payment will be due following entry of an order approving the Services Agreement between the Debtor and GlassRatner and on the 1st of each month thereafter. It is contemplated that the CRO will average approximately fifteen (15) hours per week during the first month and ten (10) hours per week thereafter. Travel time shall be compensated at 25% of the stated hourly rate.

(b) <u>Fees in Excess of Monthly Cap</u>: Should GlassRatner or CRO incur fees during any specific month that exceed the Monthly Cap, ("Unbilled Fees"), such fees shall be treated as follows:

<u>i.</u> 50% of the Unbilled Fees shall be carried over and billed in the month immediately following, and

<u>ii.</u> 50% of the Unbilled Fees shall be permanently written off by GlassRatner.

(c) <u>Standard Hourly Rate</u>: At the present time, GlassRatner does not anticipate the need for Additional Personnel to assist the CRO. If Additional Personnel is required, GlassRatner will provide a supplemental declaration to this Motion.

(d) <u>Cash on Account</u>: The Debtor did not make any deposit or pay any retainer to GlassRatner before the commencement of the case.

In addition to the hourly rates set forth above, the Debtor shall reimburse both GlassRatner and the CRO respectively for all reasonable out-of-pocket expenses incurred in connection with this engagement such as travel, lodging, telephone and facsimile charges. Further, should GlassRatner provide litigation support consulting or forensic accounting, those services will be billed in addition to the CRO services.

3HD2910

7

| | |
|---|---|
| 1 | GlassRatner shall file with the Court, with copies to the United States Trustee and all |
| 2 | official committees, a monthly report of staffing on the engagement for the previous month. |
| 3 | Such report shall include the names and functions filled of the individuals assigned. All |
| 4 | staffing shall be subject to review by the Court in the event an objection is filed. |
| 5 | GlassRatner shall file with the Court (and serve copies on the United States Trustee and |
| 6 | any official committees appointed in this case contemporaneously with such filing) reports of |
| 7 | compensation earned and expenses incurred on at least a quarterly basis. Such reports shall |
| 8 | contain summary charts which describe services provided, identify the compensation earned by |
| 9 | each executive officer and staff employee provided, and itemize the expenses incurred. Time |
| 10 | records for all GlassRatner Additional Personnel other than the CRO shall (i) be appended to |
| 11 | the reports, (ii) contain detailed time entries describing the task(s) performed, and (iii) be |
| 12 | organized by project category. When GlassRatner personnel are providing services at an |
| 13 | hourly rate, such personnel shall record their time entries in increments of no greater than one- |
| 14 | tenth hour (.1). All compensation shall be subject to review by the Court in the event an |
| 15 | objection is filed. The first quarterly report will be submitted forty-five (45) days from the end |
| 16 | of the first calendar quarter after the Petition Date and will cover the period to and including |
| 17 | the last day of the first quarter after the Petition Date. This procedure will continue at three |
| 18 | month intervals thereafter. Because GlassRatner is not being employed as a professional under |
| 19 | section 327 of the Bankruptcy Code, it will not be submitting regular fee applications pursuant |
| 20 | to sections 330 and 331 of the Bankruptcy Code. GlassRatner will, however, submit certain |
| 21 | reports described above. |
| 22 | The Debtor does not owe GlassRatner any amount for services performed or expenses |
| 23 | incurred prior to the Petition Date and thus GlassRatner is not a prepetition creditor of the |
| 24 | Debtor. |
| 25 | Accordingly, the Debtor and I believe that GlassRatner is a "disinterested person" as |
| 26 | defined in section 101(14) of the Bankruptcy Code. |
| 27 | The Engagement Contract contains standard indemnification and limitation of liability |
| 28 | language with respect to GlassRatner's services. With respect to Mr. Hughes in his capacity as |

CRO, the Debtor shall indemnify the CRO on the same terms as provided to the Debtor's directors under the Debtor's by-laws and applicable state law.

The terms and conditions of the Engagement Contract were negotiated by the Debtor and GlassRatner at arm's length and in good faith. The Debtor submits that the employment of GlassRatner is a sound exercise of its business judgment. GlassRatner's services are necessary and essential to the Debtor's restructuring efforts. Debtor and I believe that Mr. Hughes has extensive experience providing management and financial services to distressed companies and those involved in the gaming industry.

**Retention of GlassRatner Is Critical to the Debtor's Success**. Denying the relief requested herein would deprive the Debtor of the assistance of a highly qualified CRO and disadvantage the Debtor and all parties in interest. Indeed, the Debtor would be forced to engage a new CRO who lacks a thorough understanding of the Debtor's business and restructuring initiatives – both already in progress and soon to be implemented. Further, hiring a new CRO would involve a learning curve, significant time and additional resources – all of which are in short supply given the brief timeframe within which the Debtor seeks to emerge from this Bankruptcy Case. Accordingly, the Debtor respectfully submits that the services provided by GlassRatner are critical to the success of the Bankruptcy Case and requests that the Court approve the Engagement Contract in substantially the form attached to the Hughes Declaration as **Exhibit 1**.

The Debtor and I believe that the employment of GlassRatner and Mr. Hughes under the terms of the Engagement Contract would benefit the Debtor's estate and creditors. The absence of executives capable of achieving a successful reorganization would hinder the Debtor's ability to reorganize in an efficient and effective manner.

Moreover, as stated herein, the Debtor and I believe that Mr. Hughes is qualified for the position for which he is being employed. The Debtor has determined that the terms of the Engagement Contract are within the range of those for senior executive officers employed with the companies of comparable size, value and reputation. Accordingly, the Debtor's decision to

1　enter into the Engagement Contract reflects an exercise of the Debtor's sound business
2　judgment.
3　　　I declare under penalty of perjury under the laws of the United States of America that
4　the foregoing is true and correct and if called as a witness I could and would testify
5　competently thereto.
6　　　I further declare that this declaration was executed this 23 day of October 2015, at
7　Fresno, California.

　　　　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　　　　KYLE R. KIRKLAND

ORIGINAL

3HD2910　　　　　　　　　　10