Case 15-14017    Filed 11/06/15    Doc 94

7

HAGOP T. BEDOYAN, CSB NO. 131285
JACOB L. EATON, CSB NO. 244834
LISA A. HOLDER, CSB NO. 217752
KLEIN, DENATALE, GOLDNER,
  COOPER, ROSENLIEB & KIMBALL, LLP
5260 N. Palm Avenue, Suite 201
Fresno, California 93704
Telephone: (559) 438-4374
Facsimile: (559) 432-1847
Email: hbedoyan@kleinlaw.com;
       jeaton@kleinlaw.com; lholder@kleinlaw.com

Proposed Attorneys for Debtor-in-Possession

# UNITED STATES BANKRUPTCY COURT

## EASTERN DISTRICT OF CALIFORNIA, FRESNO DIVISION

| | |
|---|---|
| In re: | Case No. 15-14017-B-11 |
| CLUB ONE CASINO, INC., | Chapter 11 |
| Debtor-in-Possession. | DC No. KDG-1 |
| | Date:   November 10, 2015<br>Time:   2:30 p.m.<br>Place:  United States Bankruptcy Court<br>        2500 Tulare Street, Fifth Floor<br>        Department B, Courtroom 13<br>        Fresno, California<br>Judge:  Honorable René Lastreto II |

**DEBTOR'S REPLY TO OPPOSITION OF GEORGE SARANTOS AND ELAINE LONG TO MOTION TO USE CASH COLLATERAL AND GRANT ADEQUATE PROTECTION**

CLUB ONE CASINO, INC., Debtor and Debtor in Possession ("Debtor" or "Club One"), respectfully replies to the *Opposition to Motion to Use Cash Collateral and Grant Adequate Protection, and Opposition to Stipulation Re: Final Order Authorizing Final Cash Collateral Use and Granting Adequate Protection* [Doc. No. 76] filed by George Sarantos ("Sarantos") and Elaine Long ("Long") on November 2, 2015 ("the Opposition").

## I.  SUMMARY OF REPLY

1. Debtor's request for use of cash collateral and the terms of the proposed stipulation are proper under 11 U.S.C. §§ 361 and 363, and the *Motion to Use Cash Collateral*

and *Grant Adequate Protection* filed by Debtor [Doc. No. 7] ("the Motion") should be granted and the *Stipulation Re: Final Order Authorizing Cash Collateral Use and Granting Adequate Protection* [Doc. No. 62] entered between Debtor and secured creditor, KMGI, Inc. ("the Stipulation" or "Cash Collateral Stipulation") should be approved. The Opposition is a lengthy, confused narrative that includes numerous purported facts that are irrelevant to the issues before the Court on the Motion and is an obvious attempt to persuade the Court that Club One is a bad actor. For purposes of the Motion, and to facilitate the Court's review of the Motion and Opposition, Debtor will not rebut each and every item in dispute. Instead, Debtor will focus on the issues that are relevant to the Motion.

2. The Opposition can be distilled into two types of objections: (1) objections to specific uses of cash and the manner of the use; and (2) objections to adequate protection offered in the Stipulation. These objections should not be sustained because 1) the cash uses are necessary for the operation of Debtor's business, 2) the administration of the estate and the Bankruptcy Code requires adequate protection of a secured creditor's position and 3) the type of adequate protection contemplated in the Stipulation is common in Chapter 11 cases.

3. Finally, Sarantos and Long lack standing to oppose Debtor's use of cash collateral because they have subordinated their claims to the senior secured claim of KMGI, Inc. ("KMGI").

## II. BACKGROUND

4. Debtor filed a Chapter 11 case (the "Case") on October 14, 2015, Case No. 15-14017-B-11. Also, Club One Acquisition Corp. ("Acquisition") filed a Chapter 11 on October 14, 2015, Case No. 15-14021-B-11. Debtor and Acquisition filed motions for joint administration of their cases on November 2, 2015 (Doc. No. 71).

5. KMGI filed Proof of Claim No. 1 for $24,290,150.00 on October 27, 2015.

6. Debtor filed the Motion seeking use of cash collateral under 11 U.S.C. § 363(c)(2) on October 15, 2015. The Court granted interim cash collateral use and set a final hearing on November 10, 2015.

///

7.  Debtor and KMGI negotiated and signed the Stipulation which was filed on October 28, 2015. Based on the Court's comments at the interim hearing, the Stipulation pares back and simplifies the earlier proposed interim cash collateral order that was attached as an exhibit to the Motion. Most importantly, the Stipulation does not include findings of fact with respect to the amount, extent or validity of KMGI's lien on the Debtor's assets.

### III. ARGUMENT

8.  The Court can approve the use of cash collateral under 11 U.S.C. § 363(c)(2) and grant adequate protection to secured creditors under 11 U.S.C. §§ 361 and 363(e). In the case at hand, Debtor and KMGI agree to the terms of the Stipulation, while Sarantos and Long, who have no interest in cash collateral, object to the Stipulation. The proposed use and adequate protection are reasonable. The Motion and Stipulation should be granted. Further, Sarantos and Long lack standing to oppose the Motion.

**A. Use of Cash Collateral Sought by Debtor is Reasonable and Necessary to the Reorganization of Debtor.**

9.  Sarantos and Long do not oppose the use of cash collateral to allow for the continued operations of the casino. *See Opposition* at page 3 at line 3, page 17 at lines 12 to 14, page 20 at lines 10 to 12. Instead, they object to specific line-items and the "rolling over" of expenditures on a line-item basis including:

   a.  Payment of $50,000 per month to KMGI as adequate protection.
   b.  Payment of professionals that have not been employed or who do not have approved fees.
   c.  The "rolling over" of line-item budget amounts to successive periods.
   d.  Payment of "undisclosed expenses of Kirkland."
   e.  Payment of officers and directors.

Debtor addresses each of the foregoing in turn.

   i.  <u>Monthly Payments of $50,000 to KMGI as Adequate Protection payments.</u>

10. 11 U.S.C. §§ 361 and 363(e) provide that adequate protection to should be given to a secured creditor when the court authorizes the use of cash collateral. 11 U.S.C. §

361(1) provides that adequate protection may be in the form of periodic payments. Based upon the proof of claim filed by KMGI on October 27, 2015 (Claim No. 1), KMGI is owed $24,290,150. The non-default contract rate of interest for the KMGI loan is based on a formula that equals about 11.5%. Interest accrual on the loan at even 10% would be approximately $200,000.00 per month. The payment of $50,000 per month proposed by Debtor and KMGI is less than a quarter of the monthly non-default interest accrual. How the adequate protection payments are applied will depend on whether or not KMGI is fully secured or undersecured. That determination can be made at a later time.

    ii.    <u>Line Item for Payment of Professionals</u>.

11.    Debtor understands that no professional requiring an employment application under Section 327 of the Bankruptcy Code may be paid without first having its fees approved by the court under Sections 330 and 331. The Stipulation simply provides the ability to pay such professionals once their fees are approved.

    iii.    <u>Roll-Over" of Line-Item Amounts to Successive Periods</u>.

12.    Unused line item amounts should roll forward to allow for good cash management of Debtor. Debtor used its best estimates as to when payments would be paid when it prepared the Budget. In the event that an expense is incurred but not paid in a given week (perhaps because an invoice has not been received or a fee application has not yet been approved), Debtor should not be prevented from paying the budgeted expense in the future.

    iv.    <u>Payment of "Undisclosed Expenses of Kirkland."</u>

13.    Reimbursement of expenses paid by Kyle Kirkland is included in the various expense categories of the Budget. These are Debtor's expenses that are paid by Mr. Kirkland and then reimbursed by Debtor for the convenience of the parties. A detailed description of the categories of the expenses that have been reimbursed to Mr. Kirkland during the year prior to the commencement of Debtor's case is attached to Debtor's Statement of Financial Affairs ("SOFA"), filed on October 28, 2015, as Exhibit 2 (Doc. No. 65). The types of expenses included in the Budget will be substantially similar to what has been reimbursed to Mr. Kirkland in the past. These expenses are not compensation to Mr. Kirkland, nor are they

1  additional expenses of Debtor beyond what is in the Budget. All such expenses can be
2  accounted for in Debtor's Monthly Operating Reports.

3     v.    <u>Payment of Outside Officers and Directors.</u>

4     14.    Sarantos and Long's objection to the payment of officers and directors refers to
5  the compensation to be paid to Bill Hughes of the GlassRatner firm, as Chief Restructuring
6  Officer for Debtor, and William Zender & Associates, as Debtor's independent director. On
7  August 10, 2015, Dana Messina resigned as the Secretary/Treasurer and director of Debtor.
8  *See*, SOFA, Responses to Questions 21 and 22. If Bill Hughes and William Zender &
9  Associates were unable to serve as Debtor's Chief Restructuring Officer and outside director,
10 respectively, Kyle Kirkland would be the sole remaining officer and director of Debtor. Given
11 the nature and extent of the related entities and substantially similar ownership of KMGI,
12 COAC and Debtor, the Debtor believes it is in the best interest of its estate and its creditors to
13 have an independent and outside officer and director employed and paid in this case. It is
14 disingenuous for Sarantos and Long to argue that these independent persons should not be
15 employed or paid, while arguing that Kyle Kirkland has competing interests and should not be
16 trusted as the president of Debtor. Given the facts of Debtor's case, it is imperative that an
17 outside director and an outside chief restructuring officer be in place and paid.

18     **B. Adequate Protection for KMGI is Required by 11 U.S.C. §§ 363(e) and 361.**

19     15.    Sarantos and Long oppose the granting of adequate protection to KMGI. In
20 addition to their complaint regarding the adequate protection payment discussed above,
21 Sarantos and Long argue that KMGI should not have a superpriority claim that is subject to a
22 "carve-out." Sarantos and Long also oppose any finding that KMGI's liens are valid.

23     16.    The Stipulation that Debtor seeks to have the Court approve does not contain
24 any findings concerning the extent or validity of KMGI's liens.

25     17.    The Stipulation grants KMGI a superpriority claim, but only to the extent of the
26 diminution of the value of KMGI's collateral as a result of Debtor's use of cash collateral.
27 This superpriority claim is (1) limited to any diminution of the value of its secured claim and
28 (2) subject to the estate's professional fee claims, United States Trustee's fees, and a $25,000

allowance for administrative and professional fees to investigate the validity of KMGI's liens. Superiority claims are contemplated by 11 U.S.C. § 507(b). This type of arrangement is not uncommon in cash collateral stipulations. In fact in one case from the Central District of California, *In re Clearwater Nursery, Inc.*, Case No. 9:15-bk-10251-DS, the Court approved on an interim and final basis (Doc. 33 and Doc. 58) a stipulation for cash collateral use with substantially similar provisions. Copies of the interim and final orders approving the stipulation and the stipulation, itself, are attached as Exhibit "A" and incorporated herein by reference.

### C. Sarantos and Long Lack Standing to Object to the Motion.

18. Sarantos and Long have subordinated their claims against Debtor to KMGI. In the Subordination Agreement (See, KMGI's Proof of Claim), Sarantos and Long agreed to take no collection actions against Debtor for the subordinated debt until KMGI's senior loans are paid in full. Therefore, Sarantos and Long are barred from objecting to the use of cash collateral.

### IV. CONCLUSION

19. The line-items that Sarantos and Long object to are reasonable and necessary costs for the administration of the estate and cash collateral use should be authorized for the expenses, subject to the employment and approval of professionals and their fees and expense reimbursements, as may be required by the Bankruptcy Code. The adequate protection agreed to between KMGI and Debtor is not uncommon and provides KMGI the protection that it needs to maintain its position. Contrary to the Opposition, all that the Debtor seeks is approval of the Stipulation.

20. The Motion and Stipulation request approval of the use of cash collateral through March 2016. However, if the Court would prefer to limit cash collateral use through the middle of January of 2016, Debtor would not oppose such a reduced period of use.

///

///

///

WHEREFORE, Debtor prays for an order overruling the Opposition and approving the Stipulation, and for such other relief as is just and proper.

Date: November 6, 2015

KLEIN, DENATALE, GOLDNER,
COOPER, ROSENLIEB & KIMBALL, LLP

By  /s/ *Hagop T. Bedoyan*
HAGOP T. BEDOYAN
Proposed Attorneys for Debtor in Possession