**5**

Jeffrey N. Pomerantz (CA Bar No. 143717)
Debra I. Grassgreen (CA Bar No. 169978)
Malhar S. Pagay (CA Bar No. 189289)
PACHULSKI STANG ZIEHL & JONES LLP
150 California Street, 15th Floor
San Francisco, California 94111-4500
Telephone: 415/263-7000
Facsimile: 415/263-7010
Email: jpomerantz@pszjlaw.com
       dgrassgreen@pszjlaw.com
       mpagay@pszjlaw.com

Attorneys for KMGI, Inc.

**UNITED STATES BANKRUPTCY COURT**

**EASTERN DISTRICT OF CALIFORNIA, FRESNO DIVISION**

| | |
|---|---|
| In re<br><br>**CLUB ONE CASINO, INC.,**<br><br>Debtor | Case No.: 15-14017-B-11<br><br>Chapter 11<br><br>DC No. KDG-1<br><br><u>Hearing Date:</u><br>Date:  November 10, 2015<br>Time:  2:30 PM<br>Place: United States Bankruptcy Court<br>       250 Tulare Street, 5th Floor<br>       Dept. B, Courtroom 13<br>       Fresno, California 93721<br>Judge: Honorable René Lastreto II |

**DECLARATION OF DANA D. MESSINA IN SUPPORT OF
KMGI, INC.'S, REPLY TO THE OBJECTION OF THE
SUBORDINATED NOTEHOLDERS TO THE DEBTOR'S MOTION TO USE CASH
COLLATERAL AND GRANT ADEQUATE PROTECTION TO THE SENIOR LENDER**

I, Dana D. Messina, declare as follows:

1. I am the President of KMGI, Inc. ("<u>KMGI</u> or "<u>Senior Lender</u>"), the senior secured lender to Club One Casino, Inc. ("<u>COCI</u>" or "<u>Debtor</u>").

2. COCI is the wholly-owned subsidiary of Club One Acquisition Corp. ("<u>COAC</u>"). COAC filed a chapter 11 case on October 14, 2015, which was assigned Case No. 15-14021-B-11. COCI commenced the above-captioned chapter 11 case also on October 14, 2015.

1

3.  I submit this declaration (the "Declaration") in support of *KMGI's Reply to the Objection of the Subordinated Noteholders to the Debtor's Motion to Use Cash Collateral and Grant Adequate Protection to the Senior Lender* ("Reply").  Except as otherwise indicated, all statements in this Declaration are based upon my personal knowledge; my review of the books and records of KMGI, relevant documents and other information prepared or collected by KMGI's employees; or my opinion based on my experience with the operations of KMGI and the Debtor and its financial condition.  If I were called to testify as a witness in this matter, I could and would competently testify to each of the facts set forth herein based upon my personal knowledge, review of documents, or opinion. I am authorized to submit this Declaration on behalf of KMGI.

4.  COCI was founded by George Sarantos ("Sarantos") and Charles "Bud" Long in 1994.  In or about 2002, Charles Long attempted to transfer his 50% interest in COCI to his wife, Elaine Long ("Long").  In July 2006, Sarantos, Elaine, and Kirkland Messina, Inc., entered into a Letter of Intent ("LOI'') providing that a newly formed company would purchase COCI from Sarantos and Long for $27,000,000.

5.  On February 24, 2007, Sarantos and Long, on the one hand, and COAC, on the other hand, entered into an Agreement for Purchase and Sale of Stock ("Acquisition Agreement"), pursuant to which COAC agreed to purchase Club One Casino for $27 million.  A true and correct copy of the Acquisition Agreement is attached hereto as **Exhibit "A."**

6.  COAC financed a portion of the purchase price with a loan (the "Senior Loan") originally held by D.B. Zwirn Special Opportunities Fund, L.P., ("Zwirn"), and then Fortress Value Recovery Fund I LLC ("Fortress") as memorialized in a Financing Agreement dated as of February 22, 2008, by and among COAC, Club One Merger Sub, Inc., the Debtor (the foregoing, collectively, the "Borrower"), various lenders and D.B. Zwirn as Agent (the "Financing Agreement").  True and correct copies of the Financing Agreement, the related Security Agreement and filed UCC-1 Financing Statement are attached hereto as **Exhibits "B," "C"** and **"D,"** respectively.

7.  The sale was concluded in 2008.  As part of the transaction, Club One Merger Sub, Inc. was merged into COCI.

8. In connection with the sale, Sarantos and Long *each* received approximately $10,700,000 in cash and a seller note for $2,500,000 due February 22, 2015 ("Subordinated Notes"). True copies of the Subordinated Notes are attached hereto as **Exhibit "E."** Long also received several million dollars of additional cash that had been paid into an escrow account when her husband was unable to receive payments from COCI after being convicted of a tax-related felony. In total, over $22,000,000 in cash was distributed to Sarantos and Long at the close of escrow. An additional $1,600,000.00 in interest on the Subordinated Notes was paid to the Sarantos and Long after the close of escrow.

9. In connection with the Acquisition Agreement, COAC, COCI, Sarantos and Long (Sarantos and Long are hereafter the "Subordinated Noteholders") and, Zwirn entered into a Seller Subordination Agreement dated February 22, 2008 (the "Subordination Agreement"). A true copy of the Subordination Agreement is attached hereto as **Exhibit "F."** The Subordinated Noteholders are subordinated to the Senior Loan under the Subordination Agreement.

10. On or about April 11, 2012, KMGI entered into a Loan Purchase Agreement by and between Fortress as seller ("Seller" or "Agent") and KMGI as Purchaser (the "Loan Purchase Agreement"). True and correct copies of the Loan Purchase Agreement, which I executed on behalf of KMGI, and accompanying UCC-1 Financing Statement Amendment, filed April 12, 2012, are attached hereto as **Exhibits "G"** and **"H,"** respectively.

11. The Loan Purchase Agreement states:

> "…[T]he Loan is subject to the terms and conditions of that Seller Subordination Agreement, dated as of February 22, 2008, among Agent, on behalf of Lenders, Borrower, George Sarantos ("Sarantos") and Elaine Long ("Long" and together with Sarantos, collectively, "Subordinated Creditors" and such agreement, the "Seller Subordination Agreement");
>
> …
>
> Seller will convey its interest and obligations in Seller Subordination Agreement to Purchaser at Closing pursuant to the Subordination Assignment and Assumption [Agreement] …."

Loan Purchase Agreement at 1.

12. As contemplated in the Loan Purchase Agreement, on or about April 11, 2012, Seller and KMGI entered into the Subordination Assignment and Assumption Agreement, by which the Seller Subordination Agreement was transferred from Seller to KMGI. A true and correct copy of the Subordination Assignment and Assumption Agreement, which I executed on behalf of KMGI, is attached hereto as **Exhibit "I."**

13. COCI's only secured creditor is KMGI, as the holder of the Senior Loan. The amount currently owed to KMGI on the Senior Loan exceeds $24,290,150.00.

14. Subsequent to the close of sale, a dispute arose between COAC and the Subordinated Noteholders regarding an additional $1,000,513 (less than 4% of the purchase price) claimed by the Subordinated Noteholders. COAC and the Subordinated Noteholders arbitrated the dispute pursuant to the arbitration provisions of the Acquisition Agreement. On July 8, 2011, the arbitrator awarded $1,000,513 to the Subordinated Noteholders as well as attorneys' fees, costs and expenses (the "Arbitration Award").

15. The Arbitration Award was subsequently reduced to judgments in favor of Sarantos and Long ("Judgments") by the Fresno County Superior Court against COAC (but not against COCI) on November 8, 2001. With the accrual of interest and costs, each judgment has grown to approximately $1,380,000. However, the Arbitration Award is not a claim against the Debtor's estate. Only COAC is liable for the Judgments.

16. The Subordination Agreement was the subject of litigation before the New York Supreme Court. The court determined by final, non-appealable order that the Subordination Agreement is fully enforceable with respect to the Subordinated Notes, the Subordinated Notes are subordinate to the Senior Loan pursuant to the terms of the Subordination Agreement and that the Subordinated Notes shall not receive payment until the Senior Loan is repaid in full. More detail concerning the decision by the New York Supreme Court holding that the Subordination Agreement was enforceable with respect to the Subordinated Notes is set forth below.

17. In January 2012, COAC and KMGI sought declaratory and injunctive relief that (a) the Judgment against COAC was subject to the Subordination Agreement; (b) block payment of the Judgment under the Subordination Agreement; and (c) to obtain a declaration that the Subordination

Agreement prohibits the demand for, or payment of, both the Judgment and the Subordinated Notes until the Senior Loan is paid in full. After a bench trial on March 24-26, 2014, the New York Supreme Court (Index No. 650049/2012), in its Post-Trial Decision and Order dated October 21, 2014, concluded that (a) that no payment of interest or other payments of the Subordinated Notes may be paid prior to payment in full of the Senior Loan; and (b) the Subordination Agreement does not bar payment by COAC of either the Arbitration Award or the Judgments confirming the Arbitration Award (the "New York Judgment"). On August 19, 2015, a portion of the New York Judgment relating to the impact of the Subordination Agreement on COAC's ability to satisfy the Arbitration Award or related judgments was appealed by COAC and KMGI to the Appellate Division of the New York Supreme Court. That appeal is pending. The Subordinated Noteholders did not appeal the New York Judgment. Thus, the New York Court's determination that the Subordinated Notes are subordinated to the Senior Loan is final and non-appealable.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 6th day of November, 2015 at Los Angeles, California.

*/s/ Dana D. Messina*

Dana D. Messina